850 So.2d 452 (2003)
Johnny E. BRANNON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-1538.
Supreme Court of Florida.
June 12, 2003.
Nancy A. Daniels, Public Defender, and Kathleen Stover, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Petitioner.
Charles J. Crist, Jr., Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Trisha E. *453 Meggs, Assistant Attorney General, Tallahassee, Florida, for Respondent.
PARIENTE, J.
We have for review Brannon v. State, 791 So.2d 1154 (Fla. 1st DCA 2001), in which the district court certified the following two questions of great public importance:
Whether the concept of fundamental sentencing error, as discussed in Maddox v. State, 760 So.2d 89 (Fla.2000), applies to defendants who could have availed themselves of the procedural mechanism of the most recent amendments to Florida Rule of Criminal Procedure 3.800(b) set forth in Amendments to Florida Rules of Criminal Procedure 3.111(e) and 3.800 and Florida Rules of Appellate Procedure 9.020(h), 9.140, and 9.600, 761 So.2d 1015 (Fla.1999)?
Where the district court previously ruled that a sentencing issue is fundamental error, the initial brief was filed after the effective date of rule 3.800(b)(2), Florida Rules of Criminal Procedure, but before the Florida Supreme Court decided Maddox v. State, does Maddox preclude the district court from ruling on the issue as a matter of fundamental error?
Id. at 1156. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer the first certified question in the negative, with the exception of fundamental error arising from the facial unconstitutionality of a sentencing statute, as further explained herein; answer the second certified question in the affirmative; and approve the decision below.
Brannon was sentenced as a habitual offender for possession of cocaine with intent to sell and for violation of probation on another offense. The legality of his sentences was not tested in the trial court, either by objection when the sentences were imposed or by subsequent motion under Florida Rule of Criminal Procedure 3.800(b).[1] Brannon took a direct appeal *454 and filed an initial brief after the effective date of the enactment of Florida Rule of Criminal Procedure 3.800(b)(2) but before our decision in Maddox v. State, 760 So.2d 89 (Fla.2000). In his brief, Brannon asserted that the trial court erred in imposing the habitual offender sanctions. The district court declined to address the sentencing issues because they were unpreserved. See Brannon, 791 So.2d at 1155. The court denied Brannon's motion for rehearing, but certified the questions of great public importance. See id. at 1155-56.
The essential issue in this case is the status of fundamental sentencing error following our adoption of rule 3.800(b)(2), which authorizes a party in a criminal appeal to raise a sentencing error in the trial court in a motion filed before the party's first brief in the appeal, and our decision in Maddox, in which we defined a window period for presenting unpreserved, fundamental sentencing errors on appeal. The impetus for the adoption of both rule 3.800(b)(1), which authorizes motions to correct sentencing error before an appeal, and 3.800(b)(2), which authorizes such motions during an appeal, was the enactment of the Criminal Appeals Reform Act of 1996 (hereinafter CARA). In Maddox, we recognized that the goal of CARA was "to ensure that all claims of error [were] raised and resolved at the first opportunity." 760 So.2d at 95 (quoting § 924.051(8), Fla. Stat. (Supp.1996)). In adopting rule 3.800(b)(2), we stated our expectation that "these amendments will provide an effective, and hopefully more `failsafe,' procedural mechanism through which defendants may present their sentencing errors to the trial court and thereby preserve them for appellate review." Amendments to Florida Rules of Criminal Procedure 3.111(e) & 3.800 & Florida Rules of Appellate Procedure 9.020(h), 9.140, & 9.600, 761 So.2d 1015, 1017-18 (Fla.2000) (hereinafter Amendments II ).[2] We explained:
The most important change in the new rule is that it significantly expands the period in which a motion to correct a sentencing error can be filed in the trial court. As with the current rule, rule 3.800(b)(1) will allow a motion to correct a sentencing error to be filed in the trial court during the time allowed for the filing of a notice of appeal. However, under the new rule 3.800(b)(2), if a notice of appeal has been filed, a motion to correct a sentencing error can also be filed in the trial court at any time until *455 the first appellate brief is filed. The deadline for filing the first appellate brief is then extended until ten days after the clerk of the circuit court transmits the supplemental record from the proceedings held on the motion to correct the sentencing error, which includes the motion, the order, any amended sentence, and the transcript if designated.

Thus, an advantage of this amendment is that it will give appellate counsel, with expertise in detecting sentencing errors, the opportunity to identify any sentencing errors and a method to correct these errors and preserve them for appeal. Unless the motion to correct the sentencing error states that appellate counsel will represent the movant in the trial court, trial counsel will represent the defendant. If the State files the motion, trial counsel will represent the defendant.

Another advantage of the rule is that it requires the movant to specifically identify the alleged sentencing error and propose how the trial court should correct the error. The rule further requires a response within fifteen days either admitting or denying the sentencing error. In many cases, we anticipate that clear errors will be corrected by agreement of the parties, thus eliminating the necessity for resolution by the appellate court and minimizing the involvement of the trial court. In appeals involving only the issue of a sentencing error, this resolution would allow for dismissal of the appeal after the error has been corrected.
For those sentencing errors that cannot be resolved by the good-faith cooperation of the parties, subdivision 3.800(b)(1)(B) provides the time limits for the trial court to dispose of the motion so as to minimize any delays in the appellate process. Unless the trial court determines that the motion can be resolved as a matter of law, the trial court must hold a calendar call within twenty days after the motion is filed to either rule on the motion or determine the need for an evidentiary hearing. If an evidentiary hearing is needed, it shall be set within twenty days of the calendar call. However, the trial court must rule on the motion within sixty days of filing or it is deemed denied. The comments to the proposed rule state that "trial courts and counsel are strongly encouraged to cooperate to resolve these motions as expeditiously as possible because they delay the appellate process." Trial courts thus have the opportunity to address and correct sentencing errors, which might eliminate the need for an appeal in many cases and also reduce the number of postconviction motions related to sentencing and appeals therefrom.

Any delay to the appellate process caused by these amendments will be more than offset by the fact that the parties will now be given a workable procedure to correct these sentencing errors in the trial court before the appeal and to preserve these errors for appellate review. This early correction of these sentencing errors will further the goal of judicial efficiency as well as ensure the integrity of the judicial process.
Id. at 1018-19 (emphasis supplied). Lastly, we stated that the amendments "shall become effective immediately and shall also apply to cases pending on appeal." Id. at 1020.
In Maddox, which was issued after Amendments II, we made clear that the window period for raising unpreserved, fundamental sentencing errors on appeal was intended to apply only to those defendants *456 who were unable to take advantage of rule 3.800(b)(2):
We anticipate that the amendments to rule 3.800(b) recently promulgated by this Court in [Amendments II] should eliminate the problem of unpreserved sentencing errors raised on direct appeal because the time in which a defendant can file a motion to correct a sentencing error in the trial court is expanded to the time the first appellate brief is filed. However, we must still address the conflict issue for those noncapital defendants whose appeals fall into the window period between the effective date of [CARA] and the effective date of our recent amendment to rule 3.800 in Amendments II.

760 So.2d at 94 (footnote omitted) (emphasis supplied). We determined that the window for raising unpreserved, fundamental sentencing errors closed with the issuance of the opinion in Amendments II. See id. at 110.
In this case, Brannon did not avail himself of the opportunity under rule 3.800(b)(2) to raise the unpreserved sentencing errors in the trial court before presenting them in his direct appeal. He filed the initial brief in the appeal from his judgment and sentence on February 10, 2001, more than a year after the window for raising unpreserved sentencing errors on appeal closed on November 12, 1999, with the adoption of rule 3.800(b)(2). See Amendments II, 761 So.2d at 1020 ("[T]he amendments ... shall become effective immediately and shall also apply to cases pending on appeal."); Maddox, 760 So.2d at 110 (defining the window period for raising serious, unpreserved, fundamental sentencing errors on appeal as "between the enactment of the Criminal Appeal Reform Act and this Court's recent opinion in Amendments II"). Thus, the intent of our adoption of rule 3.800(b)(2) and the effect of Maddox is to preclude litigants such as Brannon from raising these claims of sentencing error for the first time on appeal. Accordingly, we hold that for defendants whose initial briefs were filed after the effective date of rule 3.800(b)(2), the failure to preserve a fundamental sentencing error by motion under rule 3.800(b) or by objection during the sentencing hearing forecloses them from raising the error on direct appeal.
In so holding, we must distinguish our decision in Harvey v. State, 848 So.2d 1060 (Fla.2003). There, we held that a defendant who failed to raise a Heggs[3] challenge via rule 3.800(b) after the Maddox window closed could nonetheless successfully challenge his sentence on direct appeal to the First District. See Harvey, 848 So.2d at 1062. Noting that the initial brief in the direct appeal was filed before our decision in Heggs and at a time when the First District had upheld the sentencing law subsequently declared invalid in Heggs, we concluded that "Harvey had no sentencing error to complain of" at that time. Id., 848 So.2d at 1063. We grounded our decision in "the interests of justice, judicial efficiency, and the unique circumstances of this case." Id., 848 So.2d at 1064.
In Harvey, a rule 3.800(b)(2) motion, which "must be served before the party's first brief is served," would have been futile because at the time that appellate counsel filed the first brief in the case, the *457 trial judge would have been required to deny the motion in accord with then-controlling First District precedent. See id., 848 So.2d at 1063; see also Pardo v. State, 596 So.2d 665, 667 (Fla.1992) ("[I]f the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it."). In comparison, the two sentencing errors raised by Brannon were not foreclosed by controlling precedent at the point that appellate counsel filed the initial brief in this case, and could have been resolved at the trial court level rather than on appeal.
Moreover, considering the interests of justice, we perceive a significant difference between imposition of a sentence pursuant to an unconstitutional enactment "void in its entirety," Heggs, 759 So.2d at 630, and the alleged errors in this case concerning whether a habitual offender sentence is authorized for a particular offense and whether a habitual offender sentence may be imposed initially upon violation of probation. In Maddox, we held that improper imposition of a habitual offender sentence contrary to specific statutory requirements was one of the sentencing errors that could be raised in the window period between the effective date of CARA and the adoption of rule 3.800(b)(2). See 760 So.2d at 102. However, we also cautioned that "for those defendants who had available the procedural mechanism of our recently amended rule 3.800(b), we anticipate that the interests of justice should be served by the ability of appellate counsel to first raise the issues in the trial court prior to filing the first appellate brief." Id. at 98. None of the types of sentencing error that we held cognizable when raised initially on appeal during the Maddox window included a facial challenge to the constitutionality of a sentencing statute, as in Heggs and Harvey.
Because the alleged sentencing errors in this case are fundamentally different from the constitutional basis for the claim in Harvey, we have treated the certified questions in the two cases differently. In Harvey, the district court certified the following questions, the first of which is identical to the first of the two certified questions in this case:
Whether the concept of fundamental sentencing error, as discussed in Maddox v. State, 760 So.2d 89 (Fla.2000), applies to defendants who could have availed themselves of the procedural mechanism of the most recent amendments to Florida Rule of Criminal Procedure 3.800(b) set forth in Amendments to Florida Rules of Criminal Procedure 3.111(e) and 3.800 and Florida Rules of Appellate Procedure 9.020(h). 9.140. and 9.600, 761 So.2d 1015 (Fla.1999).
Whether an appellant in the First District Court of Appeal, who could have availed himself of the procedural mechanism of the most recent amendments to Florida Rule of Criminal Procedure 3.800(b) set forth in Amendments to Florida Rules of Criminal Procedure 3.111(e) and 3.800 and Florida Rules of Appellate Procedure 9.020(h). 9.140. and 9.600, 761 So.2d 1015 (Fla.1999), had an obligation to raise his single subject challenge to the 1995 sentencing guidelines in the trial court, despite the existence of adverse precedent in Trapp v. State, 736 So.2d 736 (Fla. 1st DCA 1999), in order to later obtain appellate relief based on Heggs v. State, 759 So.2d 620 (Fla.2000).
Harvey v. State, 786 So.2d 28, 32-33 (Fla. 1st DCA 2001). We combined these two questions into one:
Whether an appellant in the First District Court of Appeal who could have availed himself of the procedural mechanism *458 of the most recent amendments to Florida Rule of Criminal Procedure 3.800(b) set forth in Amendments to Florida Rules of Criminal Procedure 3.111(e) and 3.800 and Florida Rules of Appellate Procedure 9.020(h), 9.140, and 9.600, 761 So.2d 1015 (Fla.1999), may raise his single subject challenge to chapter 95-184, Laws of Florida, as fundamental error for the first time on appeal notwithstanding precedent from the First District Court of Appeal in Trapp v. State, 736 So.2d 736 (Fla. 1st DCA 1999), upholding the constitutionality of chapter 95-184, which was later overturned by the Florida Supreme Court during the briefing period.
Harvey, 848 So.2d at 1061. We gave an affirmative answer to the combined certified question in Harvey "for the limited purpose expressed herein." Id., 848 So.2d at 1064. In this case, we leave the first certified question in the broader form posed by the First District, but provide a qualified answer. We view our holding in this case as setting forth the rule regarding preservation of sentencing error via rule 3.800(b)(2), and deem Harvey to be an exception applying only to a facial challenge to the constitutionality of a sentencing statute that, at the time the first appellate brief is filed in the case, has not been declared unconstitutional in any appellate decision binding on the trial court.[4] In Harvey, because the First District had rejected the facial constitutional challenge to the legislation that included the 1995 guidelines amendment, the Heggs issue raised by Harvey "did not exist" for trial courts within the First District when the first brief was filed. Id., 848 So.2d at 1063.
Therefore, we conclude that judicial efficiency and the interests of justice are better served by requiring defendants to comply with the requirements of rule 3.800(b) under the circumstances of this case, in contrast to the "unique circumstances" of Harvey. Id., 848 So.2d at 1064. The interests of justice are further served by the fact that Brannon retains an opportunity to assert the sentencing error after the direct appeal, through either rule 3.800(a) or rule 3.850.[5]
Next, we reaffirm that the window period we recognized in Maddox for raising unpreserved fundamental sentencing errors closed with the November 12, 1999, effective date of Amendments II and not with the issuance of Maddox on May 11, 2000. In Maddox, we held that the courts should "correct certain categories of sentencing errors for criminal defendants whose appellate briefs were filed during the window period after the enactment of [CARA] but before the adoption of our recent procedural changes in Amendments II." 760 So.2d at 99. Our opinion in Amendments II placed defendants and their attorneys on notice that rule 3.800(b) must be used to preserve both fundamental and nonfundamental sentencing error:
[T]he amended rule is intended to provide one mechanism whereby all sentencing errors may be preserved for appellate review. The comments to the proposed rule defines a "sentencing error" as including "harmful errors in orders entered as a result of the sentencing process. This includes errors in orders of probation, orders of community control, cost and restitution orders, as well as errors within the sentence itself." *459 The amendment to rule 3.800(a) will make it clear that a rule 3.800(b) motion can be used to correct any type of sentencing error, whether we had formerly called that error erroneous, unlawful, or illegal.
761 So.2d at 1019 (emphasis supplied).
Our opinion in Maddox reaffirmed that in cases in which the initial brief is filed after the effective date of Amendments II, the defendant is required to have objected at sentencing or utilized rule 3.800(b) to preserve all sentencing errors, including fundamental sentencing errors, for appeal. To extend the window we recognized in Maddox beyond the effective date of Amendments II would be inconsistent with the explicit rationale of both decisions. This conclusion comports with our decisions in other cases involving windows resulting from the passage of unconstitutional legislation and the subsequent rectification of the defect. We have held that these windows close with the enactment curing the defect, rather than with the judicial decision recognizing the defect. See, e.g., Trapp v. State, 760 So.2d 924, 928 (Fla.2000) (holding that Heggs window closed when Legislature, as part of biennial adoption process, reenacted amendments contained in legislation violating single-subject rule); see also State v. Johnson, 616 So.2d 1, 2 (Fla.1993) ("Once reenacted as a portion of the Florida Statutes, a chapter law is no longer subject to challenge on the grounds that it violates the single subject requirement of article III, section 6, of the Florida Constitution."). Therefore, we decline to hold that the preservation requirement of Maddox should be given solely prospective effect.
For these reasons, we answer the first certified question in the negative except as to fundamental error arising from the facial unconstitutionality of a sentencing statute as explained herein, answer the second certified question in the affirmative, and approve the decision of the First District.
It is so ordered.
ANSTEAD, C.J., LEWIS, and QUINCE, JJ., and SHAW, Senior Justice, concur.
WELLS, J., concurs specially with an opinion, in which CANTERO, J., concurs.
WELLS, J., specially concurring.
I concur in the majority's decision in this case and the holding that the sentencing error had to be presented to the trial court.
I do not agree with or join in that part of the opinion which distinguishes this case from Harvey v. State, 848 So.2d 1060 (Fla. 2003). The discussion in this case concerning the majority decision in Harvey confirms my concern about the Harvey decision, as set forth in my dissent in Harvey.
CANTERO, J., concurs.
NOTES
[1] Rule 3.800(b) provides:

(b) Motion to Correct Sentencing Error.
A motion to correct any sentencing error, including an illegal sentence, may be filed as allowed by this subdivision. This subdivision shall not be applicable to those cases in which the death sentence has been imposed and direct appeal jurisdiction is in the Supreme Court under article V, section 3(b)(1) of the Florida Constitution. The motion must identify the error with specificity and provide a proposed correction. A response to the motion may be filed within 15 days, either admitting or contesting the alleged error. Motions may be filed by the state under this subdivision only if the correction of the sentencing error would benefit the defendant or to correct a scrivener's error.
(1) Motion Before Appeal. During the time allowed for the filing of a notice of appeal of a sentence, a defendant or the state may file a motion to correct a sentencing error.
(A) This motion shall stay rendition under Florida Rule of Appellate Procedure 9.020(h).
(B) Unless the trial court determines that the motion can be resolved as a matter of law without a hearing, it shall hold a calendar call no later than 20 days from the filing of the motion, with notice to all parties, for the express purpose of either ruling on the motion or determining the need for an evidentiary hearing. If an evidentiary hearing is needed, it shall be set no more than 20 days from the date of the calendar call. Within 60 days from the filing of the motion, the trial court shall file an order ruling on the motion. If no order is filed within 60 days, the motion shall be considered denied.
(2) Motion Pending Appeal. If an appeal is pending, a defendant or the state may file in the trial court a motion to correct a sentencing error. The motion may be filed by appellate counsel and must be served before the party's first brief is served. A notice of pending motion to correct sentencing error shall be filed in the appellate court, which notice automatically shall extend the time for the filing of the brief until 10 days after the clerk of circuit court transmits the supplemental record under Florida Rule of Appellate Procedure 9.140(e)(6).
(A) The motion shall be served on the trial court and on all trial and appellate counsel of record. Unless the motion expressly states that appellate counsel will represent the movant in the trial court, trial counsel will represent the movant on the motion under Florida Rule of Appellate Procedure 9.140(b)(5). If the state is the movant, trial counsel will represent the defendant unless appellate counsel for the defendant notifies trial counsel and the trial court that he or she will represent the defendant on the state's motion.
(B) The trial court shall resolve this motion in accordance with the procedures in subdivision (b)(1)(B).
(C) In accordance with Florida Rule of Appellate Procedure 9140(e)(6), the clerk of circuit court shall supplement the appellate record with the motion, the order, any amended sentence, and, if designated, a transcript of any additional portion of the proceedings.
[2] For consistency with our prior opinions, we refer to this decision as Amendments II to distinguish it from Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103 (Fla.1996), which has been designated Amendments I.
[3] Heggs v. State, 759 So.2d 620 (Fla.2000). In Heggs, we held that chapter 95-184, Laws of Florida, was enacted in violation of the single-subject requirement of article III, section 6 of the Florida Constitution. Id. at 627. We determined that defendants sentenced under a revision to the sentencing guidelines contained in chapter 95-184 were entitled to be resentenced if their sentences were in excess of what they could have received under the previous, valid version of the guidelines. Id.
[4] If there is no controlling decision by this Court or the district court having jurisdiction over the trial court on a point of law, a decision by another district court is binding. See Pardo, 596 So.2d at 666-67.
[5] Because we include this proviso, we expressly decline to address the merits of any potential claim.