983 So.2d 562 (2008)
Bertha JACKSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC07-659.
Supreme Court of Florida.
May 29, 2008.
*565 James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Robert J. Krauss, Assistant Attorney General, Bureau Chief, and Ha Thu Dao, Assistant Attorney General, Tampa, Florida, for Respondent.
CANTERO, J.
In this case, we decide whether a trial court's consideration, for sentencing purposes, of victim impact testimony without defense counsel present is a sentencing error as contemplated by rule 3.800(b), Florida Rules of Criminal Procedure. If it is, then for the error to be considered on appeal the defendant must either object at the time or file a post-sentence motion under rule 3.800(b). If it is not a sentencing error, then an unpreserved claim may be considered on appeal even if a motion under rule 3.800(b) is not filed, but only under the stringent fundamental error standard. In deciding this issue, we must resolve a conflict in the district courts of appeal about which errors constitute "sentencing errors" for purposes of rule 3.800(b) and Florida Rule of Appellate Procedure 9.140(e). The First District Court of Appeal has held that the denial of counsel at resentencing is "not a sentencing error, but rather a due process error" that may be raised for the first time on *566 appeal and reviewed for fundamental error. See Gonzalez v. State, 838 So.2d 1242, 1243 (Fla. 1st DCA 2003). In the opinion we review, the Second District Court of Appeal disagreed, concluding that a claim that the "lack of representation at sentencing violates due process is a claim of sentencing error and therefore should have been preserved for appeal as required by rule 9.140(e)." Jackson v. State, 952 So.2d 613, 615 (Fla. 2d DCA 2007). The Second District certified conflict with Gonzalez. Id. at 615. We have jurisdiction, art. V, § 3(b)(4), Fla. Const., and accepted review to resolve the conflict. Jackson v. State, 959 So.2d 716 (Fla.2007) (accepting review).
For the reasons explained below, we hold that the denial of counsel at sentencing is not a "sentencing error" under rule 3.800(b). The rule was intended to permit preservation of errors in orders entered as a result of the sentencing process  in other words, errors in cost and restitution orders, probation or community control orders, or in the sentence itself. It was not intended to abrogate the requirement for contemporaneous objections. Denial of counsel at sentencing, while occurring during the sentencing process, is not an error in an "order[ ] entered as a result of the sentencing process." Fla. R.Crim. P. 3.800 court cmt. Therefore, to assert such a claim on appeal, no motion under rule 3.800(b) need be filed. Such errors, however, remain subject to the contemporaneous objection rule; if not preserved at trial, they may be reviewed on appeal only for fundamental error. While a denial of counsel for an entire sentencing proceeding would constitute fundamental error, the temporary absence of counsel, at least under the facts of this case, does not. We therefore approve Gonzalez, 838 So.2d 1242, and approve the result, but not the reasoning, in Jackson, 952 So.2d 613.

I. FACTS AND PROCEDURAL HISTORY
A jury found the Petitioner guilty of aggravated battery with a weapon. After the verdict, the trial judge ordered a presentence investigation and set sentencing four weeks later. Before the court adjourned, the State requested that the victim, who had flown in from North Carolina for the trial, be allowed to speak on the issue of sentencing.[1] The trial court responded: "Have her produced. I'm not going to make her come back from North Carolina for sentencing. Everybody stay put until we get the girl back up here." Defense counsel left the courtroom.
After a brief recess, the hearing reconvened. Present were the prosecutor, the defendant, and the victim. Defense counsel did not return. The court ordered a lunch recess, after which the same parties returned. The trial judge expressed reluctance to hear the victim's testimony without *567 defense counsel present, but after noting that the victim had the right to speak about the impact of the crime, that he had advised the parties not to leave the courthouse, and that he could not reach defense counsel by phone, the court allowed the victim to address the court.
During the victim's testimony (which in the transcript is fewer than seven pages long), defense counsel called in and was placed on speakerphone in the courtroom. The following conversation occurred:
THE COURT: Did you not understand that I was going to take the victim's statement so that she wouldn't have to come back from North Carolina?
MR. ANDERSON [defense counsel]: No, I'm sorry. I certainly didn't.
THE COURT: I thought I made it clear. I've taken part of her statement. You can listen to the rest. I will go further and tell you what I have gotten so far.
MR. ANDERSON: Okay.
After summarizing her statement, the trial judge informed the victim that the minimum sentence would be about three years in prison, with a maximum of thirty years. The victim did not think three years was enough, but thought thirty years was too much.
Subsequently, the trial judge held a sentencing hearing. Defense counsel was present. In arguing for a sentence toward the low end of the guidelines, defense counsel noted, among other things: "After all, my understanding is that the victim was opposed to a draconian sentence. . . ." The court adjudged Jackson guilty of aggravated battery and sentenced her to five years in prison.
After filing a notice of appeal, the defense filed a motion to correct sentencing error, arguing that the written judgment and sentencing scoresheet erroneously showed a conviction of aggravated battery with a firearm instead of aggravated battery with a weapon, and also that the judgment showed a conviction for a first-degree felony even though the trial judge orally announced that the crime was a second-degree felony, and sentenced Jackson accordingly. The motion did not raise the absence of counsel during the victim impact testimony. The trial court granted the motion.
On appeal, Jackson argued "that the trial court erred in hearing testimony from the victim for purposes of sentencing without defense counsel present in the courtroom." Jackson, 952 So.2d at 614. The Second District affirmed, concluding that the "sentencing error" was not preserved, and certified conflict with the First District's decision in Gonzalez, 838 So.2d 1242, that the lack of representation during resentencing is "not a sentencing error, but rather a due process error" that may be raised on direct appeal.
We now resolve the conflict.

II. ANALYSIS
As stated earlier, the issue in this case is whether a trial court's consideration for sentencing purposes of victim impact testimony without defense counsel present is a sentencing error as contemplated by rule 3.800(b). If it is, then when a defendant did not object to the error, for the appellate court to consider the issue, the defendant must file a post-sentence motion under rule 3.800(b). If it is not a sentencing error, then when a defendant did not object at the time, no motion under rule 3.800(b) is necessary to preserve the issue for appeal; however, the appellate court must apply the stringent fundamental error standard.
We have stated often, and again just recently, that most trial court errors *568 are subject to the contemporaneous objection rule. "To preserve error for appellate review, the general rule is a contemporaneous, specific objection must occur during trial at the time of the alleged error." Gore v. State, 964 So.2d 1257, 1265 (Fla. 2007), cert. denied, ___ U.S. ___, 128 S.Ct. 1250, 170 L.Ed.2d 89 (2008). We recently explained the reasons for the rule:
This requirement is "based on practical necessity and basic fairness in the operation of a judicial system." Castor v. State, 365 So.2d 701, 703 (Fla.1978). The rule "not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client's tactical advantage." F.B. v. State, 852 So.2d 226, 229 (Fla.2003).
Insko v. State, 969 So.2d 992, 1001 (Fla. 2007). These reasons are as relevant in the context of sentencing as in any other.
Errors that have not been preserved by contemporaneous objection can be considered on direct appeal only if the error is fundamental. See, e.g., Goodwin v. State, 751 So.2d 537, 544 (Fla.1999) ("If the error is not properly preserved or is unpreserved, the conviction can be reversed only if the error is `fundamental.'"). Fundamental error is "error which goes to the foundation of the case or goes to the merits of the cause of action." Hopkins v. State, 632 So.2d 1372, 1374 (Fla.1994) (quoting Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970)). In this case, the Petitioner did not preserve by contemporaneous objection her claim of a deprivation of counsel during part of the victim impact statement.[2] Ordinarily, therefore, an appellate court could review the claim, but only for fundamental error.
The State argues, however, and the Second District held, that the trial court's error was a "sentencing error," which is subject to slightly different rules. As we recently explained, a defendant has several different options available to raise sentencing errors:
First, when preserved for review, the error may be raised on direct appeal. Second, even if not originally preserved, "to provide defendants with a mechanism to correct sentencing errors in the trial court at the earliest opportunity" and to "give defendants a means to preserve these errors for appellate review," we amended Florida Rule of Criminal Procedure 3.800(b) to allow defendants to file a motion to correct sentencing error even while an appeal is pending (but before the initial brief). This rule also authorizes the trial court to hold an evidentiary hearing. Third, under rule 3.850, a defendant may raise a sentencing error within two years after the sentence becomes final. . . .
. . . .
Rule 3.800(a) provides yet a fourth avenue for asserting sentencing error. . . . Under this rule, a defendant may allege (1) that the sentence imposed is illegal; (2) that insufficient credit was awarded for time served; or (3) that the sentencing scoresheet was incorrectly calculated.
*569 Brooks v. State, 969 So.2d 238, 241-42 (Fla.2007) (citations and footnote omitted) (quoting Amendments to Fla. Rules of Criminal Procedure 3.111(e) & 3.800 & Fla. Rules of Appellate Procedure 9.020(h), 9.140, & 9.600, 761 So.2d 1015, 1016 (Fla.1999) (Amendments II)). In this case, we focus on rule 3.800(b), and consider which errors fall within its scope.
Rule 3.800(b) allows the filing of a "motion to correct any sentencing error, including an illegal sentence" before filing an appeal or, when an appeal is pending, before the first brief is filed. Florida Rule of Appellate Procedure 9.140(e) in turn provides that "[a] sentencing error may not be raised on appeal unless the alleged error has first been brought to the attention of the lower tribunal: (1) at the time of sentencing; or (2) by motion pursuant to Florida Rule of Criminal Procedure 3.800(b)." In Brannon v. State, 850 So.2d 452, 456 (Fla.2003), we held "that for defendants whose initial briefs were filed after the effective date of rule 3.800(b)(2), the failure to preserve a fundamental sentencing error by motion under rule 3.800(b) or by objection during the sentencing hearing forecloses them from raising the error on direct appeal." See also Maddox v. State, 760 So.2d 89, 95, 99 (Fla.2000) (holding that for defendants whose appeals fell within the window between the effective date of the Act and the 1999 amendment to rule 3.800, a narrow class of "patent and serious" unpreserved errors could be corrected on direct appeal as fundamental error).
Thus, rule 3.800(b) creates a two-edged sword for defendants who do not object to sentencing errors before the sentence is rendered: on the one hand, it allows defendants to raise such errors for the first time after the sentence; on the other hand, it also requires defendants to do so if the appellate court is to consider the issue. In other words, for sentencing errors, to raise even fundamental error on appeal, defendants must first file a motion under rule 3.800(b).[3] If the error is not a "sentencing error," however, then rules 3.800(b) and 9.140(e) do not apply. Instead, the contemporaneous objection rule applies, which permits consideration of unpreserved claims on direct appeal, but only under the very narrow fundamental error standard. Appellate courts have disagreed on what kind of errors constitute "sentencing errors" subject to the rule.
Because Jackson did not preserve the claim at issue by contemporaneous objection, the narrow issue before us is whether that claim addresses a "sentencing error" that should have been raised in a motion under rule 3.800(b) to be reviewable on appeal; and if not, whether the unpreserved error was fundamental. The Second District held that the Petitioner's claim addressed a sentencing error; therefore, because the Petitioner did not file a motion under rule 3.800(b), it could not consider the issue on appeal. We hold that a claim of partial deprivation of counsel during a sentencing hearing is not a "sentencing error" as contemplated by rule 3.800(b), and therefore no motion under that rule must be filed. The unpreserved claim is therefore reviewable on appeal for fundamental error. We further conclude, however, that any error was not fundamental.
Below, we explain our holding by (A) outlining the conflict in the district courts; (B) detailing the background of rule *570 3.800(b); (C) clarifying the definition of "sentencing error" for purposes of rules 3.800(b) and 9.140(e); and (D) concluding that, under the facts of this case, hearing victim impact testimony while counsel was temporarily absent was not fundamental error.
A. The Conflict in the District Courts
The conflict issue is whether a claim of denial of counsel at sentencing is a "sentencing error" for purposes of rules 3.800(b) and 9.140(e). In Gonzalez, the First District recognized that unpreserved sentencing errors cannot be considered on appeal, but concluded that "[t]he lack of representation is not a sentencing error, but rather a due process error," that could be considered. 838 So.2d at 1243. In the decision we review, the Second District held that a claim of deprivation of counsel at sentencing is a sentencing error. Jackson, 952 So.2d at 615. The district court explained that it had "classified a claim of constitutional error affecting a sentencing proceeding as a claim of sentencing error which must be preserved in order to be raised on appeal." Id. at 614-15 (citing Harley v. State, 924 So.2d 831, 832 (Fla. 2d DCA 2005)). The district court concluded that any error that affects the sentencing proceeding is subject to rules 3.800(b) and 9.140(e) and, therefore, Jackson's failure to file a rule 3.800(b) motion precluded appellate review. The court certified conflict with Gonzalez. See Jackson, 952 So.2d at 615.
In his specially concurring opinion, Judge Stringer disagreed that Jackson's claim could have been preserved under rule 3.800(b). He concluded that "a `sentencing error' that can be preserved under rule 3.800(b)(2) is an error in the sentence itself  not any error that might conceivably occur during a sentencing hearing." Jackson, 952 So.2d at 616 (Stringer, J., specially concurring). Judge Stringer explained:
Jackson's lack of representation at the sentencing hearing is not a harmful error in an order entered as a result of the sentencing process. It is also not an error within the sentence itself. Instead, Jackson's lack of representation constitutes a due process violation that occurred at the sentencing hearing and which was subject to the contemporaneous objection rule.
. . . I do not believe that by adopting rule 3.800(b)(2) the supreme court intended to give a criminal defendant the right to stand mute in the face of obvious procedural irregularities at a sentencing hearing secure in the knowledge that if he or she is dissatisfied with the resulting sentence, he or she could resurrect objections to those procedural deficiencies in a subsequent 3.800(b)(2) motion.
Id. He therefore agreed with the First District's decision in Gonzalez. Id.
To resolve the conflict, we must decide whether a claim of a denial of counsel at sentencing is a "sentencing error" as contemplated by rule 3.800(b).

B. Rule 3.800(b)
We begin by outlining the history of rule 3.800(b). The rule was a reaction to the proliferation of appeals of technical sentencing issues that easily could have been remedied in the trial court. As we explained in Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103, 1103 (Fla.1996) (Amendments I), because "scarce resources were being unnecessarily expended in appeals from guilty pleas and appeals relating to sentencing errors," we suggested rules amendments "designed to limit the record and the issues which could be raised on appeals from pleas of guilty and nolo contendere without reservation and to require that sentencing *571 issues first be raised in the trial court." While amendments were under consideration, the Legislature enacted the Criminal Appeal Reform Act of 1996 (the Act) which, among other things, created section 924.051, Florida Statutes. See Ch. 96-248, § 4, Laws of Fla.[4] The Act's goal was "to ensure that all claims of error are raised and resolved at the first opportunity." Maddox, 760 So.2d at 95 (quoting § 924.051(8), Fla. Stat. (Supp.1996)); see also Amendments II, 761 So.2d at 1016.
We promulgated rule 3.800(b) as an emergency amendment to "authorize the filing of a motion to correct a defendant's sentence within ten days." Amendments I, 696 So.2d at 1105.[5] "Because many sentencing errors are not immediately apparent at sentencing, we felt that this rule would provide an avenue to preserve sentencing errors and thereby appeal them." 696 So.2d at 1105. As we explained in Amendments II, rule 3.800(b) was designed to accomplish two purposes: "First, we intended to provide defendants with a mechanism to correct sentencing errors in the trial court at the earliest opportunity, especially when the error resulted from a written judgment and sentence that was entered after the oral pronouncement of sentence. Second, we intended to give defendants a means to preserve these errors for appellate review." 761 So.2d at 1016. At the same time, we adopted rule 9.140(d), Florida Rules of Appellate Procedure (now rule 9.140(e)), requiring that sentencing errors be preserved either through a contemporaneous objection or by motion under rule 3.800(b). See Amendments I, 696 So.2d at 1131. The "statutory and rule changes embodied a policy decision intended to `relieve the workload of appellate courts' and to `place correction of alleged errors in the hands of the judicial officer [the trial judge] best able to investigate and to correct any error.'" Amendments II, 761 So.2d at 1016 (quoting Maddox v. State, 708 So.2d 617, 621 (Fla. 5th DCA 1998), approved in part, 760 So.2d 89 (Fla.2000)).
Unfortunately, the rule changes did not have the desired effect, but instead spawned a new debate about what constitutes fundamental error and whether any unpreserved sentencing error may be considered on direct appeal. Amendments II, 761 So.2d at 1016. We therefore amended rule 3.800(b) again (to substantially its current form) to "provide an effective, and hopefully more `failsafe,' procedural mechanism through which defendants may present their sentencing errors to the trial court and thereby preserve them for appellate review." Id. at 1017-18. We explained that "the primary goal of these amendments is to ensure that sentencing errors will be corrected at the earliest possible opportunity by the trial court. If the amendment fulfills this goal, the ultimate result will be a conservation of judicial resources without sacrificing the rights of defendants to receive a proper and lawful sentence." Id. at 1020; see also Maddox, 760 So.2d at 95 ("[S]entencing errors *572 should be handled by the trial courts at the earliest opportunity rather than on appeal or in the postconviction process.").
The Court Commentary to rule 3.800 defines a "sentencing error" as including "harmful errors in orders entered as a result of the sentencing process. This includes errors in orders of probation, orders of community control, cost and restitution orders, as well as errors within the sentence itself." Fla. R.Crim. P. 3.800 court cmt.; see also Brannon, 850 So.2d at 458-59. Despite this definition, district courts have disagreed about which alleged errors constitute "sentencing errors" under rules 3.800(b) and 9.140(e). Compare, e.g., Jackson, 952 So.2d at 615, and Nicholson v. State, 846 So.2d 1217, 1219 (Fla. 5th DCA 2003) ("We think a sentencing error is not only an error in a `sentence' but also any error that occurs as part of the sentencing process."); with Harris v. State, 959 So.2d 794, 796 (Fla. 2d DCA 2007) (questioning whether a claim that the trial judge made improper comments during sentencing "is one that is waived when counsel fails to contemporaneously object or whether it constitutes a `sentencing error' that can be preserved by the filing of a motion pursuant to rule 3.800(b)(2)"), review denied, 968 So.2d 556 (Fla.2007); Griffin v. State, 946 So.2d 610, 613 (Fla. 2d DCA 2007) ("`Sentencing error' for purposes of [rule 3.800(b) ] was never intended to cover any and all issues that arise at sentencing hearings. . . ."), quashed in part on other grounds, 980 So.2d 1035 (Fla.2008); and Gonzalez, 838 So.2d at 1243. We therefore clarify the definition of "sentencing error" and explain why a claim of denial of counsel at sentencing does not meet it.

C. Clarifying the Definition of "Sentencing Error"
Although quoted above, the definition of "sentencing error" in the Court Commentary to rule 3.800 bears repeating: "[S]entencing errors include harmful errors in orders entered as a result of the sentencing process. This includes errors in orders of probation, orders of community control, cost and restitution orders, as well as errors within the sentence itself." Fla. R. Civ. P. 3.800 court cmt. The commentary thus explains that rule 3.800(b) is intended to permit defendants to bring to the trial court's attention errors in sentence-related orders, not any error in the sentencing process.
As we explained in Amendments I, rule 3.800(b) was intended to "authorize the filing of a motion to correct a defendant's sentence." Amendments I, 696 So.2d at 1105 (emphasis added). We have never held that any error that happens to occur in the sentencing context constitutes a "sentencing error" under the rule. Instead, errors we have recognized as "sentencing errors" are those apparent in orders entered as a result of the sentencing process. For example, we have recognized the following as "sentencing errors" subject to the rule: claims that the defendant was improperly habitualized, see Brannon, 850 So.2d at 454; that the sentence exceeds the statutory maximum, see Terry v. State, 764 So.2d 571, 572 (Fla.2000); that the scoresheet was inaccurate, see State v. Anderson, 905 So.2d 111, 118 (Fla.2005); that the trial court improperly imposed a departure sentence, see Thogode v. State, 763 So.2d 281, 281 (Fla.2000); that the written order deviated from the oral pronouncement, see State v. Cote, 913 So.2d 544 (Fla.2005); that the trial court improperly assessed costs, see Maddox, 760 So.2d at 101-09; that the trial court improperly sentenced the defendant to simultaneous incarceration and probation, see Spencer v. State, 764 So.2d 576, 577 (Fla.2000); that the trial court failed to award credit for time served, see Charles v. State, 763 So.2d *573 316, 317 (Fla.2000); that the trial court failed to address in writing its decision to impose adult sanctions, see Cargle v. State, 770 So.2d 1151, 1152 (Fla.2000); and that a sentencing statute was unconstitutional, see Salters v. State, 758 So.2d 667, 669 n. 4 (Fla.2000). While these holdings do not necessarily exhaust the list of errors that can be designated as "sentencing errors" under rule 3.800(b), they all involve errors related to the ultimate sanctions imposed, whether involving incarceration, conditions of probation, or costs.
These cases are consistent with the goal of both the Act and the rules amendments to ensure that sentencing errors are brought to the trial court's attention at the earliest opportunity. See, e.g., Maddox, 760 So.2d at 95; Amendments II, 761 So.2d at 1016. When a sentence is erroneous, it is more efficient to address the issue in the trial court first, where it can be quickly remedied. In many circumstances, however, defendants do not have the opportunity to object or otherwise address the trial court before the sentencing order is entered. For example, where the written sentence deviates from an oral pronouncement, the defendant has no reason to object at the sentencing; only when the sentencing order issues does the defendant notice the discrepancy. Before rule 3.800(b), however, no mechanism existed for the defendant to remedy the error in the trial court. The only remedy was to appeal the sentence. The rule was designed to remedy that institutional inefficiency.
In contrast, defendants do have the opportunity to object to many errors that occur during the sentencing process  for example, the introduction of evidence at sentencing. The rule was never intended to allow a defendant (or defense counsel) to sit silent in the face of a procedural error in the sentencing process and then, if unhappy with the result, file a motion under rule 3.800(b). To the contrary, such a practice undermines the goal of addressing errors at the earliest opportunity. As one court has emphasized,
The rule was not intended to circumvent rules requiring contemporaneous objections or enforcing principles of waiver. It was not intended to give a defendant a "second bite at the apple" to contest evidentiary rulings made at sentencing to which the defendant could have objected but chose not to do so. It was not intended as a broad substitute for a postconviction claim of ineffective assistance of counsel for counsel's representation at a sentencing hearing.
Griffin, 946 So.2d at 613.
In addition, we have recognized that the changes to the statutes and rules were intended to relieve the appellate workload and to limit sentencing errors brought on direct appeal. See, e.g., Amendments II, 761 So.2d at 1016. Allowing defendants to use rule 3.800(b) to resurrect unpreserved errors in the sentencing process increases rather than decreases the errors that may be brought on appeal and increases the appellate workload. We therefore agree with Judge Stringer that "a `sentencing error' that can be preserved under rule 3.800(b)(2) is an error in the sentence itself  not any error that might conceivably occur during a sentencing hearing." Jackson, 952 So.2d at 616 (Stringer, J., specially concurring). We also agree with the court in Griffin that rule 3.800(b) was not intended to circumvent rules requiring contemporaneous objections or to substitute for ineffective assistance of counsel claims.
On the other hand, the rule applies to more than illegal sentences. According to its plain language, rule 3.800(b) may be used "to correct any sentencing error, including an illegal sentence." Fla. *574 R. Civ. P. 3.800(b) (emphasis added); see also Williams v. State, 957 So.2d 600, 602 (Fla.2007) ("We have generally defined an `illegal sentence' as one that imposes a punishment or penalty that no judge under the entire body of sentencing statutes and laws could impose under any set of factual circumstances."). In Amendments II, we clarified the relationship between rule 3.800(a) and rule 3.800(b), stating that "a rule 3.800(b) motion can be used to correct any type of sentencing error, whether we had formerly called that error erroneous, unlawful, or illegal." 761 So.2d at 1019 (emphasis added). Although rule 3.800(b) encompasses any claim that could be raised under rule 3.800(a), see Brooks, 969 So.2d at 242 n. 7, the plain language of rule 3.800(b) is not limited to errors resulting in an "illegal" sentence or errors to which the defendant had no opportunity to object. Instead, it provides that it may be used to correct "any sentencing error." There are "sentencing errors" to which the defendant may have had an opportunity to object that do not result in an "illegal" sentence or a sentence otherwise subject to correction under rule 3.800(a). For example, the imposition of costs without statutory authority is a "sentencing error" for purposes of rule 3.800(b). See Maddox, 760 So.2d at 109 (recognizing that the unpreserved "sentencing error" at issue in Maddox involved improper imposition of six dollars in costs without statutory authority); see also Fla. R.Crim. P. 3.800 court cmt. (explaining that an error in a cost or restitution order is a "sentencing error" for purposes of the rule). Where the costs are announced at sentencing, the defendant has an opportunity to object to unauthorized costs. However, the imposition of these costs does not constitute fundamental error, much less rise to the level of an "illegal" sentence. See Maddox, 760 So.2d at 100 & n. 8 (stating that "only in an extreme case would an improper cost assessment or public defender's lien qualify as fundamental error" and recognizing that "the class of errors that constitute an `illegal' sentence that can be raised for the first time in a postconviction motion decades after a sentence becomes final is a narrower class of errors than those termed `fundamental' errors").
Thus, as written, rule 3.800(b) is not limited to correcting "illegal" sentences or errors to which the defendant had no opportunity to object. Instead, the rule may be used to correct and preserve for appeal any error in an order entered as a result of the sentencing process  that is, orders related to the sanctions imposed. A claim of denial of counsel at sentencing, however, is an error in the sentencing process, not an error in the sentencing order. Therefore, such a claim is not cognizable in a motion under rule 3.800(b) and no such motion must be filed for the appellate court to consider the issue.

D. The Deprivation of Counsel During Part of a Sentencing Proceeding is not Fundamental Error
Having concluded that a claim of denial of counsel at sentencing is not a "sentencing error" subject to rule 3.800(b), we apply the general rule that an unpreserved error may be considered on appeal only if the error is fundamental. See, e.g., Goodwin, 751 So.2d at 544. We conclude that a complete denial of counsel at sentencing, as occurred in Gonzalez, constitutes fundamental error, but the temporary absence of counsel, as occurred in Jackson, does not.
"To establish a claim of denial of the right to counsel, a defendant `need only show that counsel was absent during a critical stage of the proceedings. . . .'" Wilson v. State, 764 So.2d 813, 816 (Fla. 4th DCA 2000) (quoting Green v. Arn, 809 *575 F.2d 1257, 1263 (6th Cir.1987), vacated on other grounds, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987)). "Sentencing is considered a critical stage at which a defendant is entitled to counsel." Williams v. State, 936 So.2d 663, 664 (Fla. 4th DCA 2006). It is undisputed that Jackson's counsel was absent during part of the victim impact testimony  testimony that, although it occurred just after trial, ordinarily is part of sentencing.
We have noted that "[g]enerally, fundamental errors are those of constitutional dimension. But not all errors of constitutional dimension are fundamental." Maddox, 760 So.2d at 100 (quoting Judge v. State, 596 So.2d 73, 79 n. 3 (Fla. 2d DCA 1991)). As we explained in Hopkins:
Fundamental error is "error which goes to the foundation of the case or goes to the merits of the cause of action." If a procedural defect is declared fundamental error, then the error can be considered on appeal even though no objection was raised in the lower court. However, this Court has cautioned that the fundamental error doctrine should be used "very guardedly." "[F]or an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process."
632 So.2d at 1374 (citations omitted) (quoting Sanford, 237 So.2d at 137, and State v. Johnson, 616 So.2d 1, 3 (Fla.1993)).
Undoubtedly, "[t]he right to counsel is a fundamental right." Vileenor v. State, 500 So.2d 713, 714 (Fla. 4th DCA 1987). Florida courts, including this Court, have found deprivations of counsel to be fundamental error. See, e.g., State v. B.P., 810 So.2d 918, 919 (Fla.2002) ("[T]he denial of counsel [at a juvenile plea hearing] constituted fundamental error."); Brady v. State, 910 So.2d 388, 390 (Fla. 2d DCA 2005) ("The denial of Brady's right to counsel is fundamental error requiring reversal."); J.R.V. v. State, 715 So.2d 1135, 1139 (Fla. 5th DCA 1998) ("Denial of the right to assistance of counsel is fundamental error."); Tyler v. State, 710 So.2d 645, 648 (Fla. 4th DCA 1998) ("A denial of a right to counsel is fundamental error."). These cases generally involve deprivation of counsel during an entire proceeding. See B.P., 810 So.2d at 918 (juvenile plea hearing); Brady, 910 So.2d at 390 (probation revocation hearing); J.R.V., 715 So.2d at 1139 (juvenile delinquency proceeding); Tyler, 710 So.2d at 646 (violation of probation hearing). We agree with the First District that a complete denial of counsel at resentencing, as occurred in Gonzalez, is fundamental error.
Jackson's claim, however, is of a denial of counsel for only part of the sentencing  in fact, only part of the victim impact testimony itself. We have not considered whether the temporary absence of counsel, i.e., a partial deprivation, is fundamental error. But see Diaz v. State, 435 So.2d 911, 912 (Fla. 4th DCA 1983) (rejecting a claim that fundamental error occurred where counsel was absent during an Allen[6] charge). However, both we and other courts have analyzed partial deprivations under a harmless error standard. See, e.g., Thompson v. State, 507 So.2d 1074, 1075 (Fla.1987) (applying the harmless error test to the deprivation of counsel during a recess); Wilson v. State, 764 So.2d 813, 819 (Fla. 4th DCA 2000) (applying the harmless error standard to a deprivation of counsel during an in-court discussion *576 in response to a jury note); Vileenor, 500 So.2d at 714 (rejecting an argument that giving jury instructions while defense counsel was temporarily absent was per se reversible).
These cases imply that the errors considered could not have been fundamental. As we have explained:
[F]undamental error is not subject to harmless error review. By its very nature, fundamental error has to be considered harmful. If the error was not harmful, it would not meet our requirement for being fundamental. . . .
To justify not imposing the contemporaneous objection rule, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." . . .
Thus, for error to meet this standard, it must follow that the error prejudiced the defendant. Therefore, all fundamental error is harmful error. However, we likewise caution that not all harmful error is fundamental. Error which does not meet the exacting standard so as to be "fundamental" is subject to review in accord with State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (discussing the harmless error test).[7]
Reed v. State, 837 So.2d 366, 369-70 (Fla. 2002) (footnote and citations omitted) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
The United States Supreme Court has "recognized a limited class of fundamental constitutional errors that `defy analysis by the "harmless error" standards.'" Neder v. United States, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). These errors are "so intrinsically harmful as to require automatic reversal (i.e., `affect substantial rights') without regard to their effect on the outcome." Id. at 7. The "complete denial of counsel" has been listed as one of the "very limited class of cases" involving "structural" error requiring automatic reversal. Id. at 8 (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). However, "[v]iolations of the right to counsel may not always be structural defects which allow a reviewing court to bypass harmless error analysis." Henderson v. Frank, 155 F.3d 159, 171 (3d Cir.1998). For example, in Satterwhite v. Texas, 486 U.S. 249, 253, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the United States Supreme Court applied a harmless error analysis to a claim of a denial of the right to consult with defense counsel before a psychiatric examination. The Court concluded that the expert's examination-based testimony at the capital sentencing proceeding violated the Sixth Amendment. Id. at 256, 108 S.Ct. 1792. It rejected, however, a per se rule of reversal:
Satterwhite urges us to adopt an automatic rule of reversal for violation of the Sixth Amendment right recognized in Estelle v. Smith [451 U.S. 454, 471, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (holding that the death penalty was improperly imposed where the psychiatric examination on which the expert testified at the penalty phase proceeded in violation *577 of the right to counsel) ]. He relies heavily upon the statement in Holloway [v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ] that "when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)." His reliance is misplaced, however, for Holloway, Gideon, Hamilton, and White were all cases in which the deprivation of the right to counsel affected  and contaminated  the entire criminal proceeding. In this case, the effect of the Sixth Amendment violation is limited to the admission into evidence of [the expert's] testimony. We have permitted harmless error analysis in both capital and noncapital cases where the evil caused by the Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial.

Satterwhite, 486 U.S. at 257, 108 S.Ct. 1792 (emphasis added); see also Vines v. United States, 28 F.3d 1123, 1129 (11th Cir.1994) (concluding, in the context of an ineffective assistance of counsel claim, that "the temporary absence of a defendant's trial counsel during a portion of the actual trial does not necessarily affect the conduct of the entire trial. . . . [T]he absence of Vines's counsel constitutes a trial error subject to harmless-error analysis."); United States v. Rapp, 871 F.2d 957, 966 (11th Cir.1989) (applying a harmless error analysis to a deprivation of counsel claim where the trial judge responded to a jury question without counsel present), abrogated on other grounds by United States v. Wells, 519 U.S. 482, 486, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997).
As in Satterwhite and other cases cited, Jackson was not completely deprived of counsel. Even if preserved, the claim would have been subject to harmless error review, thus suggesting that any error could not have been fundamental. See Reed, 837 So.2d at 369 ("[F]undamental error is not subject to harmless error review.").
The circumstances of the deprivation also confirm that any error was not fundamental. Counsel was present during the entire trial. The jury already had returned a guilty verdict when the trial court ordered the victim's testimony to be taken. The court notified counsel of its decision and ordered counsel to return to the courtroom after a brief recess. Jackson's counsel failed to return. Counsel joined the hearing by telephone, however, and had the opportunity to participate for part of the victim's testimony. When defense counsel joined the hearing by telephone, the trial judge summarized the substance of the testimony. At that point, counsel had the opportunity to question the victim (who was still on the stand). Counsel was also present at the subsequent sentencing hearing, where he relied on the victim impact testimony in urging the trial court to impose a sentence toward the lower end of the guidelines. Under these facts, the failure to provide defense counsel for Jackson during part of the victim's statement does not "go[ ] to the foundation of the case or . . . the merits of the cause of action.'" Hopkins, 632 So.2d at 1374 (quoting Sanford, 237 So.2d at 137). Therefore, any error is not fundamental error, and the failure to raise a contemporaneous objection precludes review. See Goodwin, 751 So.2d at 544.

*578 III. CONCLUSION
For the reasons explained above, we hold that a claim of a denial of counsel at sentencing is not the proper subject of a motion under Florida Rule of Criminal Procedure 3.800(b). That rule permits preservation of errors in orders entered as a result of the sentencing process, not all errors that happen to occur during that process. The denial of counsel at sentencing is an error in the sentencing process, not an error in a sentence-related order. Therefore, unpreserved claims of this nature may be considered on direct appeal even if no motion under rule 3.800(b) has been filed, but only under the fundamental error standard. A complete deprivation of counsel during resentencing, as occurred in Gonzalez, is fundamental error. The partial deprivation of counsel under the facts in this case, however, is not. We therefore approve Gonzalez, 838 So.2d 1242, and approve the result, but not the reasoning, in Jackson, 952 So.2d 613.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
NOTES
[1] Where, as here, the defendant is convicted of a felony, Florida law requires that "[a]t the sentencing hearing, and prior to the imposition of sentence . . . the sentencing court shall permit the victim of the crime . . . to: (a) Appear before the sentencing court for the purpose of making a statement under oath for the record; and (b) Submit a written statement under oath to the office of the state attorney, which statement shall be filed with the sentencing court." § 921.143(1), Fla. Stat. (2005). The statement "shall relate to the facts of the case and the extent of any harm, including social, psychological, or physical harm, financial losses, loss of earnings directly or indirectly resulting from the crime for which the defendant is being sentenced, and any matter relevant to an appropriate disposition and sentence." § 921.143(2), Fla. Stat. (2005); see also art. I, § 16(b), Fla. Const. ("Victims of crime . . . are entitled to the right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings, to the extent that these rights do not interfere with the constitutional rights of the accused.").
[2] We reject Jackson's argument that she could not have objected at the time because counsel was absent. Counsel was absent only temporarily and appeared by telephone during the victim impact testimony. Counsel could have objected at that time, but when told what had occurred in his absence, he responded, "Okay." Defense counsel also could have requested that the testimony of the victim be delayed to give counsel an opportunity to return to the courthouse. Finally, at the subsequent sentencing hearing, counsel could have objected or moved to strike the victim's testimony.
[3] In Harvey v. State, 848 So.2d 1060 (Fla. 2003), we created a limited exception to the rule for "a facial challenge to the constitutionality of a sentencing statute that, at the time the first appellate brief is filed in the case, has not been declared unconstitutional in any appellate decision binding on the trial court." Brannon, 850 So.2d at 458.
[4] The statute provides, in pertinent part:

(3) An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.
§ 924.051, Fla. Stat. (2007).
[5] We later extended the timeframe to thirty days. See Amendments I, 696 So.2d at 1105. The rule now permits filing before appeal or, if an appeal is pending, before filing the first brief. Fla. R.Crim. P. 3.800(b).
[6] Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (upholding the trial judge's charge to the jury that it was the jury's duty to decide the case if it could conscientiously do so).
[7] In DiGuilio, 491 So.2d at 1135, we explained that "[t]he harmless error test, as set forth in Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."