# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2807
LT Case No. 2022-CF-001037

_____

ADRIAN GORE,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
London M. Kite, Judge.

Matthew J. Metz, Public Defender and Zachary Wiseman,
Assistant Public Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, and Kristie Regan, Assistant
Attorney General, Tallahassee, for Appellee.

January 17, 2025

PER CURIAM.

    AFFIRMED.

WALLIS and KILBANE, JJ., concur.
PRATT, J., concurs, with opinion.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

PRATT, J., concurring.

Adrian Gore appeals the sentence that he received after he entered a guilty plea and a deferred-sentencing arrangement. On appeal, Gore argues that the trial court erred when it found his failure to appear for sentencing was willful and sentenced him to a term of imprisonment longer than the one for which he'd bargained. The panel affirms, and I concur in that disposition. Gore's appeal alleges a plea-agreement violation, and by failing to move to withdraw his plea, he has failed to preserve his claim for appeal. *See* Fla. R. App. P. 9.140(b)(2)(A)(ii)b. (2023). Gore argues that he need not comply with the preservation requirement of Florida Appellate Rule 9.140, but he is wrong, and I write separately to explain why. In short: Rule 9.140 requires the filing of a motion to withdraw plea to preserve a plea-agreement violation claim for appeal, Gore fails to explain how his case might fit within the one exception to that requirement that our precedent has created, and that exception is no longer good law in any event. Notably, these conclusions follow whether or not we characterize Gore's deferred-sentencing arrangement as a *Quarterman* agreement.[1]

## I.

Rule 9.140 of the Florida Rules of Appellate Procedure narrowly circumscribes a defendant's ability to appeal from a guilty or nolo contendere plea. The rule authorizes pleading

---

[1] Gore and the State both assert that a *Quarterman* agreement is at issue in this appeal, and neither party contends that Gore's deferred-sentencing arrangement can be categorized as anything other than a *Quarterman* agreement. *See Quarterman v. State*, 527 So. 2d 1380 (Fla. 1988). However, as I explain in this opinion, our disposition does not turn on whether Gore's deferred-sentencing arrangement is a *Quarterman* agreement; no matter how we characterize it, we must affirm. Therefore, I do not address whether Gore's arrangement complies with *Quarterman*.

3

defendants to appeal prior dispositive orders that they expressly reserve the right to appeal, and it states that "[a] defendant who pleads guilty or nolo contendere may otherwise directly appeal only" certain other enumerated issues. Fla. R. App. P. 9.140(b)-(2)(A)(i)–(ii). Among those otherwise appealable issues are "a sentencing error, if preserved," and "a violation of the plea agreement, *if preserved by a motion to withdraw plea*[.]" Fla. R. App. P. 9.140(b)(2)(A)(ii)b., d. (emphasis added). The rule also contemplates that the pleading defendant may appeal lack of subject-matter jurisdiction, Fla. R. App. P. 9.140(b)(2)(A)(ii)a., "an involuntary plea, if preserved by a motion to withdraw plea," Fla. R. App. P. 9.140(b)(2)(A)(ii)c., and "as otherwise provided by law." Fla. R. App. P. 9.140(b)(2)(A)(ii)e. It enumerates no other basis for a pleading defendant to appeal his judgment or sentence.

## A.

Typically, when pleading defendants argue on appeal that their sentence exceeds the bargained-for range, it's clear which provision of Rule 9.140 applies: Rule 9.140(b)(2)(a)(ii)b. As we have held, "an issue concerning a sentence which exceeds the terms contained in a plea agreement . . . is a violation of the plea agreement which must be raised through a motion to withdraw." *Williams v. State*, 873 So. 2d 1248, 1249 (Fla. 5th DCA 2004); *see also Angulo v. State*, 857 So. 2d 355, 356 (Fla. 5th DCA 2003) ("[I]ssues regarding the violation of a plea agreement . . . must be preserved by a motion to withdraw the plea.").

But what about pleading defendants who, like Gore, entered deferred-sentencing arrangements and then received a beyond-range sentence for willfully failing to appear? They might make two arguments. First, they might argue that the court was bound to the sentencing range specified in the plea agreement because their deferred-sentencing arrangement is unenforceable. This argument treats the deferred-sentencing arrangement as a nullity and alleges a simple violation of the plea agreement. Therefore, it is subject to Rule 9.140(b)(2)(a)(ii)b's preservation requirement. Second, they might accept the enforceability of their deferred-sentencing arrangement (*i.e.*, they might concede that the

4

arrangement complies with *Quarterman*)[2] and instead attack their sentence on the arrangement's own terms, arguing that their failure to appear for sentencing was not willful. This is the argument that Gore makes here. Which provision of the rule governs these kinds of willfulness appeals? Clearly, it's not Rule 9.140(b)(2)(A)(ii)a. or 9.140(b)(2)(A)(ii)c., which concern challenges to subject-matter jurisdiction and involuntary pleas, respectively. No provision of Rule 9.140 or other law specifically authorizes appeals of sentences based on willfulness findings, so it can't be Rule 9.140(b)(2)(A)(ii)e., either. And such findings and sentences necessarily *follow* a defendant's plea, so they cannot be an expressly reserved "*prior* dispositive order" appealable under Rule 9.140(b)(2)(A)(i). For such matters to be appealable, then, they must constitute either sentencing errors under Rule 9.140(b)(2)-(A)(ii)d., or plea-agreement violations under Rule 9.140(b)(2)-(A)(ii)b.

On this question, we cannot write on a blank slate; binding precedent forecloses the first alternative and compels the latter one. Our court has squarely held that a *Quarterman* willfulness challenge does not concern a sentencing error. *See Cruz v. State*, 303 So. 3d 285, 287 (Fla. 5th DCA 2020) (holding that a court's alleged failure to make a willfulness finding, and consequent breach of a *Quarterman* agreement, "does not fall within the purview of a sentencing error under rule 3.800(b)"); *cf. also Jackson v. State*, 983 So. 2d 562, 573 (Fla. 2008) (cautioning that Rule 3.800(b) "was not intended to give a defendant a 'second bite at the apple' to contest *evidentiary rulings made at sentencing* to which the defendant could have objected but chose not to do so" (emphasis added) (internal quotation marks omitted)).[3] In

─────────

[2] Again, I do not address whether Gore's deferred-sentencing arrangement meets *Quarterman*'s requirements.

[3] We have no basis to give the term "sentencing error" a different meaning in Florida Appellate Rule 9.140 than in Florida Rule of Criminal Procedure 3.800. Rule 9.140 explicitly references Rule 3.800, requiring that, to be raised on appeal, sentencing errors must first be raised before the lower tribunal, either at the sentencing hearing or in a Rule 3.800(b) motion. *See* Fla. R. App. P. 9.140(e). And indeed, the Florida Supreme Court has indicated

addition, the Florida Supreme Court's *Quarterman* decision itself frames enforceable deferred-sentencing arrangements as part of the defendant's plea agreement. *Quarterman* noted that "the conditions which [the defendant] agreed to were not imposed after the plea bargain had been accepted, . . . but were accepted *as an integral part of the bargain itself*." 527 So. 2d at 1382 (emphasis added) (internal quotation marks and citations omitted). It follows, then, that when a court erroneously determines that the defendant has breached his deferred-sentencing agreement and pronounces a sentence harsher than the one for which he bargained, the court violates his plea agreement and does not commit a sentencing error. *See Williams*, 873 So. 2d at 1249.

Our court repeatedly has adhered to this understanding of *Quarterman*. For example, in *Bennett v. State*, we observed, "*Quarterman* held that a court could impose a departure sentence for the failure to appear where the release and its conditions *were part of the plea agreement* and where the defendant agreed to the imposition of the departure sentence if he did not appear as ordered," and we described the defendant's *Quarterman*'s release as "a valid modification of the plea agreement." 858 So. 2d 1251, 1252, 1253 (Fla. 5th DCA 2003) (emphasis added). In *Smith v. State*, we again described *Quarterman* as having held that, "where a furlough and an enhanced sentence for failure to appear in court at a later time *are part of the plea agreement*, a court is justified in imposing the enhanced sentence after the defendant fails to appear in court, without giving him an opportunity to withdraw his plea." 988 So. 2d 1258, 1261 (Fla. 5th DCA 2008) (emphasis added). And more recently, in *Ingram v. State*, we recited that at the defendant's "change of plea hearing, the trial court granted his

─────────────────────

that the term carries the same meaning in both rules. *See, e.g.*, *Jackson v. State*, 983 So. 2d 562, 569 (Fla. 2008) ("If the error is not a 'sentencing error,' however, then rules 3.800(b) and 9.140(e) do not apply."); *id.* at 570 ("clarifying the definition of 'sentencing error' for purposes of rules 3.800(b) and 9.140(e)"); *id.* at 571 ("[W]e adopted rule 9.140(d), Florida Rules of Appellate Procedure (now rule 9.140(e)), requiring that sentencing errors be preserved either through a contemporaneous objection or by motion under rule 3.800(b).").

request for a '*Quarterman's* release,' *and this provision was incorporated into the plea agreement* accepted by the court." 291 So. 3d 1009, 1011 (Fla. 5th DCA 2020) (emphasis added).

Our court is not alone in characterizing enforceable deferred-sentencing arrangements as plea agreement provisions. The First District understands *Quarterman* to have "held that plea agreements may contain [certain] conditions." *Mack v. State*, 955 So. 2d 51, 54 (Fla. 1st DCA 2007); *see also id.* at 54 n.1 (describing *Quarterman* provisions as "*Quarterman* plea agreements" and a "condition in the plea agreement"). So does the Second District. As that court has explained:

> The plea agreement under which the defendant is released is essentially a civil contract. In consideration for the privilege to remain free, the defendant agrees that if he does not appear for sentencing at the agreed upon time and place, the trial court can sentence the defendant to any lawful sentence even if it is a sentence in excess of the sentence specified in the negotiated plea agreement. Under the original sentencing guidelines, such an agreement required the defendant to agree that he or she would allow the judge to impose an upward departure sentence based on the defendant's failure to appear for sentencing. This practice was approved in *Quarterman* and thus the agreement became known as a *Quarterman* agreement.

*Neeld v. State*, 977 So. 2d 740, 743 (Fla. 2d DCA 2008); *see also id.* at 741 (using the term "*Quarterman* plea agreement").

In sum, under both our precedent and the Florida Supreme Court's *Quarterman* decision itself, as our court and others have construed it, deferred-sentencing arrangements—when they are *Quarterman*-compliant and enforceable—are amendments to the plea agreement. They act as a kind of proviso, specifying that because the defendant has bargained for a period of pre-sentencing liberty, the agreed sentencing range will not apply if the defendant

7

willfully fails to appear for sentencing. A court's erroneous willfulness finding violates the defendant's plea agreement, as amended, because it sentences him more harshly than the sentencing range for which he bargained. And indeed, under our precedent, a sentence founded on a court's failure to make a proper willfulness finding—a violation of the amended plea agreement—does not constitute a sentencing error. Therefore, pleading defendants cannot appeal a willfulness finding and sentence as a sentencing error under Rule 9.140(b)(2)(A)(ii)d.; they can appeal them only as a plea-agreement violation under Rule 9.140(b)(2)(A)(ii)b. They stand in the same shoes as any other defendant who attacks his sentence as beyond the range specified in his plea agreement. To preserve their claims for appeal, they must file a motion to withdraw their plea.

**B.**

All this poses a problem for Gore, who has filed no motion to withdraw his plea. On its face, Rule 9.140(b)(2)(A)(ii)b. requires such a motion to preserve plea-agreement violations for appeal, and it contains no exception to that preservation requirement. As our court has held, "an issue concerning a sentence which exceeds the terms contained in a plea agreement . . . is a violation of the plea agreement which must be raised through a motion to withdraw." *Williams*, 873 So. 2d at 1249; *see also Angulo*, 857 So. 2d at 356. Even so, Gore asserts that he should be entitled to proceed with his unpreserved appeal because, as his initial brief puts it, "[c]ourts have previously held that such [willfulness] issues can be reviewed even without a motion to withdraw the plea being filed with the trial court." This succinct assertion does not come to terms with our precedent, which has excused noncompliance with Rule 9.140(b)(2)(A)(ii)b. only where the record facially shows ineffective assistance of counsel.

Our court first announced this exception in *Barber v. State*, 901 So. 2d 364 (Fla. 5th DCA 2005). In *Barber*, the defendant was sentenced more harshly than his plea agreement contemplated after he failed to appear for his sentencing hearing. *Id.* at 364–65. He did not move to withdraw his guilty plea. Instead, after he noticed his appeal, he filed a motion to correct his sentence under Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure. *Id.* at

8

365. That post-appeal motion "specifically alleged that there was no *Quarterman* agreement between the State and Mr. Barber." *Id.* (footnote omitted). The sentencing court dismissed the motion as untimely, and the appeal resumed. *Id.* While we agreed with the sentencing court that Rule 3.800 afforded Barber no relief, we nonetheless found merit in the dismissed motion's allegation. "The transcript and the written plea agreement reflect that there was, in fact, no express [*Quarterman*] agreement concerning the consequences attendant upon the failure of Mr. Barber to appear at sentencing." *Id.*

Even though Rule 9.140 made a motion to withdraw plea "the proper method" for Barber "to seek relief," *id.*, our court noted the unavailability of relief under Rule 3.800(b). *Id.* at 366. We called the combined effect of the two procedural rules "particularly unsatisfactory in the present case because the State candidly acknowledge[d]" that Barber should have been afforded an opportunity to withdraw his plea. *Id.* The State combined its concession with an invitation for us to "remand to provide Mr. Barber with the opportunity to withdraw his plea or accept the sentence." *Id.* We thought that such a remand "would offend the bounds of our jurisdiction." *Id.* Nonetheless, "in the interest of judicial economy," we opined, "it makes no sense to affirm the judgment and sentence without prejudice to the right of the appellant to seek relief pursuant to Rule 3.850, particularly when the error is so obvious that it is conceded by the State." *Id.*

Without pointing to any language in the applicable procedural rules—and, indeed, having stated that we found their combined effect "particularly unsatisfactory" and that it "ma[de] no sense" to apply them, *id.*—*Barber* built on the State's concessions and fashioned its own revision. "One way to accomplish this result," we proffered, "is to consider whether the failure to move to withdraw the plea at the trial level establishes on its face that Mr. Barber's counsel was ineffective." *Id.* "If the record on its face reflects the merit of a claim of ineffective assistance of trial counsel," we postulated, "then we may consider this issue on direct appeal." *Id.* Having crafted this exception, we then posited that no conceivable defense tactic could have underpinned Barber's counsel's failure to file a motion to withdraw plea. *Id.* Therefore, we concluded that counsel had rendered ineffective assistance meeting both prongs of

the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* We reversed and remanded for the defendant to be given the choice whether to withdraw his plea or accept the sentence that the court had pronounced. *Id.*

## C.

Our court has twice applied the ineffective-assistance exception that *Barber* announced, granting relief on a plea-agreement violation claim notwithstanding the pleading defendant's failure to file a motion to withdraw plea. In both cases, we reiterated that the *Barber* exception applies only where the record facially shows ineffective assistance of counsel. *See Diggs v. State*, 12 So. 3d 864, 865 (Fla. 5th DCA 2009) ("Although Diggs' [*pro se*] motion to withdraw his plea was a nullity, because the face of the record reflects the merit of an ineffective assistance of counsel claim, we have the jurisdiction to consider the issue he raises on appeal."); *Smith*, 988 So. 2d at 1260 (observing that, where a defendant appeals from a guilty or nolo contendere plea without first filing a motion to withdraw his plea, notwithstanding the text of Rule 9.140(b)(2)(A)(ii)b., "jurisdiction may still exist where the record on its face establishes ineffective assistance of trial counsel").[4]

---

[4] *Barber*'s, *Smith*'s, and *Diggs*'s focus on "jurisdiction" appears to conflate jurisdiction with preservation. As its text makes clear, Rule 9.140(b)(2)(A)(ii)b. erects a *preservation* requirement rather than a jurisdictional one. Any exception to this requirement likewise must go to preservation rather than to jurisdiction. To say that we have "jurisdiction" to entertain an appeal does not speak to whether the defendant preserved the issue that he appeals; jurisdiction and preservation are distinct concepts, and a defendant's failure to preserve a claim does not divest us of jurisdiction to adjudicate his appeal. *See, e.g.*, *Leonard v. State*, 760 So. 2d 114, 117–18 (Fla. 2000); *Fluhart v. Rasmussen*, 383 So. 3d 889, 889–90 (Fla. 5th DCA 2024) (en banc) (concluding that we had jurisdiction and affirming because the appellant failed to preserve her argument on appeal).

To be sure, *Barber* and its progeny dealt with alleged plea-agreement violations where there was no *Quarterman*-compliant deferred-sentencing arrangement. However, contrary to Gore's suggestion, our court's *Quarterman* cases do not establish any special exception for *Quarterman* willfulness appeals. For example, in *Quarterman* cases where we have found a lack of preservation, we have observed that the defendant did not raise a willfulness argument before the sentencing court. *See, e.g., Jones v. State*, 392 So. 3d 852, 854 (Fla. 5th DCA 2024); *Cruz*, 303 So. 3d at 286. But those decisions do not mention whether the defendants filed a motion to withdraw plea and thus did not hold that such a motion was unnecessary. Much less can they be read to hold that *Quarterman* cases are wholly exempt from the requirement in Rule 9.140(b)(2)(A)(ii)b. that the defendant file such a motion to preserve his claim for appeal. Nor do they imply any such proposition. Requiring the defendant to raise his willfulness argument before the court at sentencing is fully consistent with also requiring him to move to withdraw his plea once the court rejects his argument; preserving a *Quarterman* willfulness challenge can require both. Moreover, that a defendant who violates a *Quarterman* provision has no right to withdraw his plea—*see, e.g., Smith*, 988 So. 2d at 1261; *Bennett*, 858 So. 2d at 1252–53—merely restates the truism that *Quarterman* agreements are enforceable, integral parts of the plea bargain, and it merely begs the question: did the defendant in fact violate his *Quarterman* agreement by willfully failing to appear? If he did, then he is not entitled to withdraw his plea.[5]

---

[5] Defendants finding themselves in Gore's position might object that a motion to withdraw plea will at best amount to an ineffective formality, and at worst might risk their plea bargain. I recognize the unlikelihood that a sentencing court would grant a defendant's motion to withdraw his plea after determining that his failure to appear was willful. This case does not present a vehicle to decide what the appropriate remedy would be in such a scenario. For present purposes, it suffices to note that it is not a foregone conclusion that the defendant forfeits his plea bargain merely by filing the motion that Rule 9.140 requires to preserve his plea-agreement violation claim. *See Hunt v. State*, 613 So. 2d 893, 898 (Fla. 1992) (per curiam) ("When an agreement with the defendant has not been fulfilled, the defendant is entitled to specific

We also have stated that, "[t]he issue of whether a *Quarterman* violation was willful is reviewable on direct appeal." *Cruz*, 303 So. 3d at 287 n.3. However, for three reasons, that generic truism should not be read to stray beyond *Barber* and dispense with Rule 9.140's plea-withdrawal requirement beyond the circumstance that *Barber* and its progeny addressed. First, whether an issue is *reviewable—i.e.*, cognizable on appeal—is distinct from the issue whether it's *preserved*. Second, and more important, *Cruz* did not mention whether the defendant in that case had moved to withdraw her plea. Therefore, it did not hold that filing a motion to withdraw plea was unnecessary to preserve the appellant's claim. Much less did it hold that such a motion is unnecessary where ineffective assistance does not appear on the face of the record. Third, for its general statement that a defendant's *Quarterman* willfulness challenge is reviewable on appeal, *Cruz* cited *Peacock v. State*, 77 So. 3d 1285 (Fla. 4th DCA 2012), which, properly understood, simply stands for the same proposition that *Barber* does. While *Peacock* "reject[ed] the State's argument that [the defendant's willfulness challenge] cannot be reviewed on direct appeal because [the] appellant did not file a motion to withdraw plea," it relied on precedent holding that a motion to withdraw plea is unnecessary for preservation where "ineffective assistance of counsel [is] established on [the] face of the record." *Id.* at 1287–88 (citing *Lowery v. State*, 22 So. 3d 745, 747–49 (Fla. 2d DCA 2009)).

## D.

In sum, binding precedent compels the conclusion that Gore's attack on his sentence alleges a plea-agreement violation rather than a sentencing error. Therefore, Gore's appeal is governed by Rule 9.140(b)(2)(A)(ii)b., which requires a motion to withdraw plea

---

performance of the unfulfilled promise or to withdrawal of her guilty plea."). And indeed, nothing in Rule 9.140 or the procedural rule governing plea withdrawals precludes the filing of a motion under protest that reserves the defendant's right to appeal the court's willfulness finding and seek specific performance of his plea agreement. *See* Fla. R. Crim. P. 3.170(f), (*l*).

to preserve the issue for appeal. And importantly, that preservation requirement applies even if Gore and the State are correct that they formed an enforceable *Quarterman* agreement. To be sure, *Barber* created a limited exception dispensing with the rule's preservation requirement where ineffective assistance indisputably appears on the face of the record. But our *Quarterman* cases have not offered a more sweeping exception for such claims than the exception that we announced in *Barber*. Nor did *Quarterman* itself address the preservation requirement for such claims. *See generally* 527 So. 2d at 1380–82.[6] Thus, no decision from our court categorically exempts *Quarterman* willfulness challenges from the rule's preservation requirement, and *Barber* offers Gore the only potential route for avoiding it.

## II.

*Barber* provides Gore's only hope, as it pronounced our court's lone exception to the preservation requirement of Rule 9.140-(b)(2)(A)(ii)b. However, while *Barber* and its progeny excused noncompliance with this duty to preserve in the *proceedings below*, they did not announce any exception to our precedent generally requiring *appellate* preservation—the duty of the appellant to raise his assignments of error in his initial brief. *See, e.g.*, *Johnson v. Wal–Mart Stores E., LP*, 389 So. 3d 705, 713 n.4 (Fla. 5th DCA 2024) (noting that "it is not our function to rebrief an appeal" and "we have no authority to . . . reformulate a party's argument on their behalf"); *Calabrese v. State*, 325 So. 3d 938, 942 (Fla. 5th DCA 2021) ("Furthermore, Calabrese did not raise a claim of fundamental error relating to this determination in his initial brief. Consequently, this claim of error has been waived for appellate review, and this Court is not required to undertake a fundamental error analysis on Calabrese's behalf."); *see also D.H. v. Adept Cmty. Servs., Inc.*, 271 So. 3d 870, 888 (Fla. 2018) (Canady, J., dissenting) ("This requirement of specific

---

[6] *Quarterman* certainly did not address—and could not have addressed—Rule 9.140(b)(2)(A)(ii)b., because that provision was not promulgated until eight years *after* the *Quarterman* decision. *See Amends. to the Fla. Rules of App. Proc.*, 696 So. 2d 1103, 1107, 1130 (Fla. 1996), *as corrected on denial of reh'g* (Dec. 26, 1996).

argument and briefing is one of the most important concepts of the appellate process. Indeed, it is not the role of the appellate court to act as standby counsel for the parties.").[7] On this score, Gore's appeal falls short.

In his initial brief, Gore contends—in a single sentence, with a citation only to the Fourth District's *Peacock* decision—that a motion to withdraw his plea is unnecessary to proceed with his appeal. He provides no argument why we should conclude that his counsel rendered ineffective assistance by failing to file a motion to withdraw his plea, let alone why this conclusion indisputably follows from the face of the record. Indeed, he does not even acknowledge that our precedent requires such a showing. Because Gore does not attempt to establish the predicate on which the *Barber* exception turns, his initial brief fails to raise and preserve any such argument and thus fails to carry Gore's burden to demonstrate reversible error.

---

[7] *Barber*'s focus on ineffective assistance appearing "on the face of the record" at least superficially calls to mind our role in reviewing appeals under the framework of *Anders v. California*, 386 U.S. 738 (1967). *Compare State v. Causey*, 503 So. 2d 321, 322 (Fla. 1987) (under *Anders*, "the appellate court must examine the record to the extent necessary to discover any errors apparent on the face of the record"). However, *Barber* did not state that the appellant's counsel had failed to present an argument for avoiding the preservation requirement of Rule 9.140(b)(2)(A)(ii)b. Therefore, we should not read between *Barber*'s lines to uncover an unannounced exception to the normal party-presentation rules of appellate preservation. Our reviewing court looks only to the face of our opinions to determine our holdings, and we should do the same. *Cf. Perlow v. Berg–Perlow*, 875 So. 2d 383, 387 (Fla. 2004) (noting that facts that "do not appear on the face of" an appellate opinion "cannot be used in determining whether there is a conflict" with other appellate opinions); *Hardee v. State*, 534 So. 2d 706, 708 (Fla. 1988) ("[F]or purposes of determining conflict jurisdiction, this Court is limited to the facts which appear on the face of the opinion.").

Gore's briefing omission is no mere technicality. As the Second District has recognized, there are cases in which "it is not so obvious that [a defendant] would wish to withdraw his plea," making it impossible to "find indisputable evidence of ineffective assistance of counsel" on "the face of [the] record." *Henson v. State*, 977 So. 2d 736, 739 (Fla. 2d DCA 2008). Indeed, were it otherwise, *every* failure to file a motion to withdraw plea might constitute ineffective assistance, and the *Barber* exception might entirely swallow Rule 9.140's plea-withdrawal requirement. We ought not excuse a defendant's failure to present, in his initial brief, an argument why his case meets the *Barber* rubric. Otherwise, we risk making Rule 9.140's plea-withdrawal requirement a total nullity.

## III.

Putting aside Gore's failure to establish a foothold in *Barber*, *Smith*, and *Diggs*—the only precedent of our court that might excuse his failure to withdraw his plea—those decisions would offer him no help in any event, as two recent Florida Supreme Court decisions have abrogated them.

## A.

In *State v. Dortch*, 317 So. 3d 1074 (Fla. 2021), the Florida Supreme Court examined Florida Appellate Rule 9.140(b)(2)(A)-(ii)c. The text of that provision is materially identical to that of Rule 9.140(b)(2)(A)(ii)b. Just as with appeals of plea-agreement violations, the provision authorizes appeals of involuntary pleas "if preserved by a motion to withdraw plea." Fla. R. App. P. 9.140(b)-(2)(A)(ii)c. The Fourth District had pronounced a fundamental-error exception to this preservation requirement, concluding "it was not necessary for Dortch to file a motion to withdraw plea before pursuing a direct appeal." *Dortch*, 317 So. 3d at 1078.

The Florida Supreme Court quashed the Fourth District's decision and affirmed Dortch's sentence, holding "that there is no fundamental-error exception to the preservation requirement of Rule 9.140(b)(2)(A)(ii)(c)." *Id.* at 1084. It began by observing that "a defendant has no constitutional due process right to the correction of unpreserved error," that "[c]ourts developed the

15

fundamental error doctrine as a matter of grace, not because of any entitlement on the part of criminal defendants," and that "there is no ironclad rule that *every* preservation requirement must have an unwritten exception allowing the appellate court to correct an unpreserved error." *Id.* at 1081. The Court then explained why Rule 9.140(b)-(2)(A)(ii)c. means what it says. First, the rule "codified [the] decision in" *Robinson v. State*, 373 So. 2d 898 (Fla. 1979), that "'an appeal from a guilty plea should never be a substitute for a motion to withdraw a plea.'" 317 So. 3d at 1082 (quoting *Robinson*, 373 So. 2d at 902). Second, "a fundamental-error exception would be inconsistent with [the] Court's precedent interpreting" section 924.051, Florida Statutes (2020), as having "itself codified existing law as embodied in *Robinson*." *Id.* Third, "a fundamental-error exception would be inconsistent with the underlying logic of *Robinson* and of the rule itself." *Id.* Fourth, "given the overall framework of the relevant rules of procedure, a fundamental-error exception is simply unwarranted." *Id.*

After rejecting several of Dortch's arguments to the contrary, the Court turned to his contention "that applying the rule's preservation requirement in these circumstances would be unjust." *Id.* at 1084. While voicing some sympathy for that concern, the Court concluded that "this argument does not supply a reason why we would be authorized to depart from the governing law as we have explained it." *Id.* Furthermore, Dortch's proposed revision of the rule would undermine the positive values that the rule serves: "clarity and finality" in bargained-for sentences. *Id.* Finally, the Court rejected Dortch's injustice premise, concluding that "the rule is fair, particularly because the accompanying rule on motions to withdraw a plea gives defendants ample opportunity to seek relief from error before pursuing an appeal." *Id.*

**B.**

Several months after it decided *Dortch*, in *Steiger v. State*, 328 So. 3d 926 (Fla. 2021), the Florida Supreme Court considered "whether appellate courts may address the merits of an unpreserved claim of ineffective assistance of trial counsel on direct appeal, absent an allegation of fundamental error." *Id.* at 929. The Court held "that section 924.051(3), Florida Statutes (2020), which prohibits raising an unpreserved claim of error on

16

direct appeal absent a showing of fundamental error, precludes appellate review of unpreserved claims of ineffective assistance of trial counsel on direct appeal." *Id.* at 928. It further held that unpreserved "ineffective assistance of counsel claims may therefore only be raised on direct appeal in the context of a fundamental error argument," and that "[i]neffective assistance of counsel claims relying upon the less-demanding *Strickland* standard are properly considered upon the filing of a legally sufficient postconviction motion in the trial court." *Id.* (footnote omitted).

The Court specifically disapproved two decisions by the Second and Fourth Districts because they "reviewed and granted relief based on unpreserved claims of ineffective assistance of trial counsel" by "reasoning that the ineffective assistance of counsel was *apparent on the face of the record* and that it would be a waste of judicial resources to not grant relief." *Id.* at 928–29, 932 (Fla. 2021) (emphasis added), *receding from Monroe v. State*, 191 So. 3d 395 (Fla. 2016), and *disapproving Howard v. State*, 288 So. 3d 1239 (Fla. 2d DCA 2020), and *Kruse v. State*, 222 So. 3d 13 (Fla. 4th DCA 2017).

## C.

Taken together, *Dortch* and *Steiger* have left nothing of the ineffective-assistance exception that *Barber* and its progeny pronounced. Construing a neighboring provision of the same appellate rule with a word-for-word identical preservation requirement, *Dortch* made clear that where Rule 9.140 requires a motion to withdraw plea to preserve a claim, it means what it says. And *Steiger* made clear that we may countenance unpreserved ineffective-assistance claims on direct appeal only under the stringent rubric of fundamental error. In particular, *Steiger* disapproved the judicial-economy rationale that courts had used to justify their review of unpreserved ineffective-assistance claims. Because it permitted an exception to a categorical plea-withdrawal requirement within Rule 9.140—and because it countenanced an unpreserved ineffective-assistance claim under the *Strickland* standard rather than the more demanding fundamental-error

standard, and it relied on a judicial-economy rationale in doing so—*Barber* cannot be reconciled with *Dortch* and *Steiger*.[8]

I am not the first to recognize the abrogating impact of these intervening Florida Supreme Court decisions. A panel of the Second District already has done so, holding that *Dortch* and *Steiger* abrogated its prior precedent that, like *Barber*, had allowed unpreserved appeals of guilty pleas with no motion to withdraw where ineffective assistance of counsel appeared on the face of the record. *See Melendez v. State*, 339 So. 3d 498, 501 (Fla. 2d DCA 2022). In fact, the very decision that the *Melendez* panel declared defunct had relied on *Barber* and its progeny. *See id.* (recognizing abrogation of *Lowery v. State*, 22 So. 3d 745, 747 (Fla. 2d DCA 2009)); *see also Lowery*, 22 So. 3d at 747–48 (extensively relying on our precedent in *Smith*, 988 So. 2d at 1260–61, and *Barber*, 901 So. 2d at 364).

As a panel, we have the authority to follow the Second District's lead, recognize the abrogating effect of *Dortch* and *Steiger*, and declare *Barber*, *Smith*, and *Diggs* a dead letter. *See, e.g., Rivera v. Hammer Head Constr. & Dev. Corp.*, 14 So. 3d 1190, 1191 (Fla. 5th DCA 2009) (panel decision recognizing that intervening Florida Supreme Court precedent abrogated prior decision of our court); *Summers v. State*, 747 So. 2d 987, 988–89 (Fla. 5th DCA 1999) (same); *see also Carter v. State*, 747 So. 2d 483, 484 (Fla. 5th DCA 2000) (reiterating *Summers*'s abrogation holding). Had Gore adequately briefed his appeal and offered an argument why his case fits within the *Barber* rubric, he would have found only a dead end.

---

[8] As I explain above, our court's decisions in *Cruz*, *Smith*, and *Bennett* did not remove *Quarterman* willfulness challenges from the *Barber* rubric and categorically exempt them from Rule 9.140's plea-withdrawal requirement. But even if they (or any other decision of our court) had announced such a sweeping holding, *Dortch* and *Steiger* would abrogate them for the same reasons they abrogate *Barber*.

**D.**

*Barber*'s demise should not surprise, as that decision claimed a power that our court does not possess. Our state constitution confers on the *Florida Supreme Court* the authority to "adopt rules for the practice and procedure in all courts," including rules of appellate procedure like Rule 9.140. *See* Art. V, § 2(a), Fla. Const.; *see also Haven Fed. Sav. & Loan Ass'n v. Kirian*, 579 So. 2d 730, 732 (Fla. 1991) (describing the Florida Supreme Court's "exclusive authority to regulate" court practice and procedure). We have no license to set those rules aside, even when we might deem them "particularly unsatisfactory," might think they disserve "the interest of judicial economy," or might fail to appreciate their wisdom. *Barber*, 901 So. 2d at 366; *see id.* (asserting that applying the procedural rules in that case would "make[ ] no sense"). *Barber* announced an entitlement "to accomplish this result," *id.*, but nowhere does our constitution empower the district courts of appeal to carve out exceptions from the procedural rules that our reviewing court promulgates. We never should have purported to wield such a prerogative. In any event, *Dortch* and *Steiger* now require us to relinquish it, and to retreat from our encroachment on the Florida Supreme Court's "exclusive authority," *Kirian*, 579 So. 2d at 732, to craft the rules of appellate procedure, including Rule 9.140. In an appropriate future case, our court should do so and return to the plain text of that rule. *See Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021) (reiterating adherence to "the supremacy-of-the-text principle").

\* \* \*

For the foregoing reasons, binding precedent and the plain text of Rule 9.140 require us to reject Gore's unpreserved plea-agreement violation claim. Therefore, I concur in the panel's decision to affirm.

19