# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2024-0224
_____

JERDARRIUS DAVIS,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____


On appeal from the Circuit Court for Leon County.
Tiffany Baker-Carper, Judge.


December 23, 2025

PER CURIAM.

   AFFIRMED.

KELSEY and LONG, JJ., concur; TANENBAUM, J., concurs with opinion.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

TANENBAUM, J., concurring.

The appellant was convicted of manslaughter under a principal theory. Though the offense itself is a second-degree felony, it was reclassified to be a first-degree felony because, ostensibly, the appellant "carr[ied], display[ed], use[d], [or] threaten[ed] to use" a firearm "during the commission of such felony." § 775.087(1)(a)–(b), Fla. Stat. He then was sentenced on that conviction to thirty years in prison as a prison releasee reoffender. *See* § 775.082(9)(a), Fla. Stat. It is true that the reclassification could not be "based on the conduct of" a criminal cohort through a "theory of constructive or vicarious" possession or use. *State v. Rodriguez*, 602 So. 2d 1270, 1272 (Fla. 1992). Put another way, there must be evidence that the appellant himself had a firearm in connection with the offense.

According to the appellant, the trial court erred when it reclassified his conviction offense because the verdict form's interrogatory to the jury regarding firearm aggravation was deficient. The pertinent verdict interrogatory went as follows:

> If you find JERDARRIUS J. DAVIS guilty of MANSLAUGHTER, you must then answer the following questions:
>
> Did the State prove beyond a reasonable doubt that while committing Manslaughter, JERDARRIUS J. DAVIS, JAHIEM I. NIXON, ·EDWARD D. JOHNSON, *or* "GENE" personally carried, possessed, displayed, used, or, threatened to use a firearm?
>
> __Yes
>
> __No

2

(emphasis supplied).

On this front, the appellant is correct: the jury's verdict using the disjunctive—determining, then, *only* that the State proved beyond a doubt *either* the appellant *or* one of his cohorts used a firearm while committing manslaughter—was legally insufficient to support reclassification.

Still, we cannot address that error in this appeal. The appellant did not challenge the verdict form at trial. In fact, as will be discussed in a moment, his counsel affirmatively agreed to it. Before raising it on appeal, the appellant presumably attempted to preserve the issue using Florida Rule of Criminal Procedure 3.800(b). A motion under that rule cannot circumvent the invited-error rule, which applies here.

On at least two occasions during the charge conference, the appellant's trial counsel agreed to both the defective verdict form and a commensurate defect in the related instruction. To provide some context, consider the following firearm aggravator instruction given to the jury:

### AGGRAVATION OF FIRST DEGREE MURDER BY CARRYING, DISPLAYING OR USING A WEAPON

If you find that JerDarrius J. Davis, Jaheim I. Nixon, Edward D. Johnson, *or* "Gene", [sic] committed First Degree Murder and you also find beyond a reasonable doubt that during the commission of the crime, *at least one of them* personally carried, displayed or used a weapon, you should find the defendant guilty of First Degree Murder with a weapon.

* * *

If you find that JerDarrius J. Davis committed First Degree Murder, but you are not convinced beyond a reasonable doubt that *he personally* carried, displayed or used a weapon, then you should find him guilty only of First Degree Murder.

(emphases supplied).

3

The highlighted text in the above-quoted verdict form and instruction was the subject of an extended colloquy between the trial judge and counsel. During the charge conference, the trial judge pointedly asked counsel what interrogatory needed to be on the verdict form to support firearm "aggravation." Because the State conceded that the appellant did not possess a firearm during the charged offense, the trial judge asked about including all the "co-defendants" (meaning, the accomplices) in the interrogatory. Here is the pertinent exchange:

THE COURT: . . . [A]ggravation of first-degree murder by carrying, displaying, or using a weapon.

I guess we need to go over the verdict form too. I don't think I have that ready yet.

[PROSECUTOR]: But I do think we need the aggravation language, Your Honor.

THE COURT: You think so?

[PROSECUTOR]: Based on the principal theory. Obviously, it wouldn't be under 10-20-Life --

[DEFENSE COUNSEL]: Right.

[PROSECUTOR]: -- but it would be under weapon enhancement.

THE COURT: Right. The use of a firearm during the commission?

[PROSECUTOR]: Yes, ma'am.

THE COURT: *Also I'm thinking that we should include under the principal theory not just Davis's name here but also the co-defendants.*

[DEFENSE COUNSEL]: *That's fine.*

THE COURT: Mr. Mood?

4

[PROSECUTOR]: I would defer to the Defense and the Court.

THE COURT: And I say that because it goes on to say, ". . . he personally carried, displayed, or used a weapon, you should find him guilty of first-degree murder with a weapon."

And the State is seeking or *acknowledging that he did not possess a weapon* but that the co-defendants did.

[PROSECUTOR]: Correct, Your Honor.

THE COURT: So I think it would be appropriate to use all of the co-defendants.

[DEFENSE COUNSEL]: And my understanding is there's still gonna be specific interrogatories as to possessing and discharging a firearm on the verdict form.

[PROSECUTOR]: Well, I don't know that we have to have discharging. I think just during the course of the commission of the crime that a firearm was --

[DEFENSE COUNSEL]: Right.

[PROSECUTOR]: -- used, carried, displayed, because that would indicate -- that would aggravate it.

[DEFENSE COUNSEL]: Right. And it may seem miniscule, but I do think there needs to be something that can differentiate who possessed the firearm, even though I know we conceded it, as to a factual finding by them.

THE COURT: Well, does it matter? And I --

[DEFENSE COUNSEL]: Not on a first-degree murder conviction it wouldn't necessarily matter, but there are circumstances if they came back with some crazy lesser in which he didn't possess a firearm, it could matter, even though we've conceded it in terms of the actual findings they make. If they came back with a manslaughter for some reason and he didn't possess a firearm.

5

THE COURT: So, then, you're proposing the interrogatory specifically ask the question of whether he possessed a firearm? Yes? No? Was a firearm possessed by one of the co-defendants, or was a firearm possessed during the commission of the manslaughter? Yes? No?

[DEFENSE COUNSEL]: Yes. As long as it can distinguish on the interrogatory whether he possessed a firearm or not. I mean, I don't necessarily believe there would have to be an interrogatory of anyone else possessing a firearm based on the evidence that we have. I mean, the only evidence is that the guy died of a gunshot wound. But in terms of whether he possessed a firearm, because of how the principal theory is applicable -- if that makes sense -- because they could come back guilty on something based on principal theory in a situation which obviously he didn't possess or discharge a firearm. And the importance of that is, at sentencing, if we get there when you sentence him, as to what's applicable or not.

THE COURT: Right. And that's what I'm wondering. And I honestly don't know if the possession of a firearm by the co-defendant could be used as an aggravating factor at sentencing for him even if they find that he did not personally possess the firearm.

[DEFENSE COUNSEL]: Right. I don't think it's a statutory aggravator in which it would increase the exposure or what you would have to sentence him to.

THE COURT: Okay.

[DEFENSE COUNSEL]: I don't. That's why I think the interrogatory, as it would apply to him, would be the most important. But if I'm wrong, I'm sure Mr. Mood will correct me or get Mr. Evans.

THE COURT: I think that's something we can look into.

[DEFENSE COUNSEL]: Yes, ma'am.

6

[PROSECUTOR]: That's what I'm looking at now because. . . .

***

. . . So I think there needs to be an interrogatory that says, During the course of the commission of the crimes, was a firearm used?

THE COURT: Right. Now, the question, though, becomes, does there need to be another interrogatory to say that the defendant actually possessed the firearm? And if not, can the -- I don't think that goes far enough to answer the question of whether or not a co-defendant's possession of a firearm be used to enhance the defendant's sentence. Or does that --

[PROSECUTOR]: . . . In Lopez, the defendant was -- there was a special finding by the jury he did not personally carry, which would preclude a 10-20-Life sentence but would not preclude --

THE COURT: The aggravation.

[PROSECUTOR]: -- the aggravation.

THE COURT: Okay.

[DEFENSE COUNSEL]: I think they asked both in that case.

***

THE COURT: All right. Okay. So -- but we're good underneath aggravation. If you find that Jer'Darrius Davis -- and include the names of the co-defendants.

[PROSECUTOR]: Yes, ma'am.

THE COURT: Okay. And all of the other information under red; is that correct? Or in red. I'm sorry.

[PROSECUTOR]: Yes, ma'am.

[DEFENSE COUNSEL]: Correct.

(emphases supplied).

———————————

The next day, before recommencing trial, the judge asked counsel whether they had any further changes to the instructions or verdict form. The following colloquy ensued:

THE COURT: Did you all get an opportunity to review it in its entirety?

[DEFENSE COUNSEL]: Yes, ma'am.

THE COURT: Did you see the portions in red?

[DEFENSE COUNSEL]: Yes, ma'am.

THE COURT: All right. So what is your position on and or or?

[PROSECUTOR]: And, Your Honor, I do have some other things that I -- in the instructions as well.

THE COURT: Okay.

[PROSECUTOR]: But I don't know if you want to take those up now or if you --

THE COURT: Let's do it all. Let's start with the and and or, though.

[PROSECUTOR]: Okay. I think the -- in terms of the and ors, or is sufficient because it would mean any one of them.

THE COURT: Right.

[PROSECUTOR]: And would include, certainly, if more than one of them acted in conjunction.

[DEFENSE COUNSEL]: I would agree, Your Honor.

8

THE COURT: Okay. That was easy.

***

[PROSECUTOR]: Then I think we only have some thoughts on the verdict form.

THE COURT: Yes. All right. So, Attorney Collins, are you fine with everything else that was provided to you in the jury instructions?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Okay. Moving on to the verdict form.

***

THE COURT: And then the interrogatories under that would then be whether or not he possessed -- or one of the co-defendants possessed a firearm and whether or not that firearm was discharged.

[PROSECUTOR]: So the State is requesting that -- or it believes -- we would contend that we're not entitled to any 10/20/Life language --

THE COURT: Okay.

[PROSECUTOR]: -- on the discharge or great bodily harm. So I believe that can be struck since 10/20/Life -- the minimum mandatory is not at issue --

THE COURT: Right.

[PROSECUTOR]: -- since the defendant is not alleged to have personally carried, discharged or caused great bodily harm. We just need a finding whether or not any of the principals carried it as to the weapon enhancement.

THE COURT: You satisfied with that position, Attorney Collins?

[DEFENSE COUNSEL]: Yes, Your Honor. I am.

9

Simply put, the appellant now "cannot successfully complain about an error for which he [or his counsel] is responsible." *Gupton v. Vill. Key & Saw Shop, Inc.*, 656 So. 2d 475, 478 (Fla. 1995). During these colloquies, the appellant's lawyer did more than "merely acquiesce[] to the incomplete instructions" and verdict form; counsel clearly was both "aware" of the erroneous instruction and verdict form (because both were discussed in depth during the charge conference) and "affirmatively agreed to" them. *Lowe v. State*, 259 So. 3d 23, 50 (Fla. 2018) (internal brackets and quotations omitted); *see also State v. Lucas*, 645 So. 2d 425, 427 (Fla. 1994) (noting exception to fundamental error analysis when "defense counsel affirmatively agreed to" an incomplete jury instruction). It naturally follows that a rule 3.800 motion cannot resurrect a moribund challenge to an agreed-to instruction or verdict form otherwise barred by this invited-error rule. *Cf. Jackson v. State*, 983 So. 2d 562, 569 (Fla. 2008) (observing that "for sentencing errors, to raise even fundamental error on appeal, defendants must first file a motion under rule 3.800(b)"); *State v. Dortch*, 317 So. 3d 1074, 1081 (Fla. 2021) (noting that "a defendant has no constitutional due process right to the correction of unpreserved error" and "that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" (internal quotations omitted)).

For this court to vacate the appellant's sentence at this point, we would have to conclude the trial court erred by denying the rule 3.800 motion. But that would mean, in essence, the trial court was boxed in at sentencing by the erroneous verdict form to which the appellant's counsel affirmatively agreed—thereby having no choice at that point but to sentence him based on an un-reclassified manslaughter offense. Call it invited error or forfeiture, or even estoppel—any way this approach is labeled, and regardless of intent of trial or appellate counsel; to set aside the sentence now, based on the appellant's assertion that the verdict form is insufficient to support reclassification—after agreeing to the form after the trial court specifically asked about it—would smack too much of sandbagging under the circumstances of this case to

warrant relief. *Cf. Anderson v. State*, 93 So. 3d 1201, 1206 (Fla. 1st DCA 2012) ("Counsel cannot sandbag a trial judge by requesting and approving something they know will result in an automatic reversal, if given." (internal quotations, brackets, and ellipsis omitted)).

Affirmance is the only permitted disposition on this direct appellate review.

_____

Jessica J. Yeary, Public Defender, and Megan Lynne Long, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Christina Piotrowski, Assistant Attorney General, Tallahassee, for Appellee.