# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-2317

_____

ENOCH NATHANIEL FRASER III,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Baker County.
Phillip A. Pena, Judge.

June 10, 2026

NEFF, J.

Appellant Enoch Nathaniel Fraser III appeals his judgment and sentence following a jury trial on multiple counts, including two counts of tampering with a witness (Counts VII and VIII). He raises three issues on appeal. As to issue one, we affirm his conviction on Count VIII for tampering with witness Kim Beverly without further discussion, as the credibility and weight of the evidence presented through the recorded jail calls was a matter within the exclusive province of the jury to resolve. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981). We write to address two asserted sentencing errors: whether the information's failure to allege an essential element of the tampering offense precluded the trial court from imposing first-degree felony sentences on Counts VII

and VIII, and whether the written probation order improperly included a special condition not orally pronounced at sentencing.

## I. First-Degree Felony Sentences on Counts Charged as Third-Degree Felonies

In the initial issue we address, the Appellant challenges his sentences on Counts VII and VIII on two grounds. First, he argues the sentences imposed exceeded the five-year statutory maximum applicable to third-degree felonies. Second, he argues the trial court compounded that error by retroactively elevating the degree of his convictions from third-degree to first-degree felonies in the written judgment after he raised the issue in a motion to correct sentencing error. We disagree as to each ground and affirm.

### A. Pertinent Facts

The Second Amended Information charged Counts VII and VIII as third-degree felonies under section 914.22(1)(e), Florida Statutes. The information did not allege the degree of the offense involved in the underlying official proceeding in which the witness tampering occurred. Both counts stated "F3/L4" indicating they were each charged as third-degree felonies.

On the weekend prior to the start of the jury trial, defense counsel independently identified during trial preparation that the tampering counts might be subject to reclassification as first-degree felonies. Defense counsel contacted the State to confirm this understanding and also informed the Appellant. When trial commenced the following Monday, defense counsel raised the issue on the record before the jury was brought in or sworn. The State agreed, noting that because Count I charged a second-degree felony, the tampering counts would constitute first-degree felonies under section 914.22(2)(c) and Rule 3.704, Fla. R. Crim. P. Both parties confirmed this understanding to the trial court. The Appellant was present throughout this discussion. The scoresheet was revised accordingly, and the court then took a short recess to allow defense counsel to review the revised scoresheet with the Appellant.

2

When the court went back on the record after the break, the court conducted a colloquy with the Appellant. The Appellant was advised that if convicted on the tampering counts as first-degree felonies, he faced a minimum guidelines sentence of 120.6 months, a maximum sentence of 95 years, and, if found to be a habitual felony offender, a potential sentence of life imprisonment. The end of the colloquy went as follows:

> THE COURT: This is now, I'm being told, if you're found responsible, it could be a first-degree felony or would be a first-degree felony depending on their finding, and that that would, based on the HFO status, that you could be sentenced to life imprisonment. Do you understand that?
> MR. FRASER: Yes, sir.
> THE COURT: All right. So it just sounds to me, just so the record is clear, that it doesn't really matter what the offer is or what the potential sentence is, that you would like to move forward.
> MR. FRASER: If I'm found guilty, I'll be comfortable with never getting out. I'm not guilty, so I'm going to take my chances on this.
> THE COURT: Okay. That's fine. I want to make sure that we're on the same page and that you feel comfortable with your decision.
> MR. FRASER: Yes, sir.

As is evident from the trial transcript, the Appellant confirmed his understanding of the charges and the potential sentence if found guilty. He then elected to proceed to trial without reservation.

At the charge conference, defense counsel requested the jury be given an interrogatory asking it to determine the degree of the underlying offense affected by the tampering, thereby implementing the first-degree felony framework. No objection was made to the jury instructions for Counts VII and VIII. The jury returned verdicts of guilty as charged on both counts and made special findings through the interrogatory that the tampering involved the investigation or prosecution of both a second and third-degree felony.

3

The trial court sentenced the Appellant to ten years of probation on Count VII and fifteen years in prison on Count VIII. These sentences were consistent with first-degree felony treatment under section 914.22(2)(c). The written judgment, however, initially adjudicated the Appellant guilty of third-degree felonies on Counts VII and VIII, consistent with the face of the Second Amended Information. Defense counsel acknowledged the first-degree felony classification of these counts at sentencing without objection.

Appellant subsequently filed a motion to correct sentencing error under Rule 3.800(b)(2), Fla. R. Crim. P., arguing the sentences exceeded the five-year statutory maximum for third-degree felonies. In response, the trial court denied the motion and amended the written judgment to reflect first-degree felony adjudications on Counts VII and VIII.

## B. Analysis

At the outset, we acknowledge that the Second Amended Information failed to allege the third element of the tampering offense as required by section 914.22 and as reflected in the standard jury instruction. Specifically missing from that document is the degree of the underlying official proceeding affected by the tampering, which determines the degree of the offense. Fla. Std. Jury Instr. (Crim.) 21.10. This omission is not trivial. Element three is expressly identified in the statute and the standard jury instruction as a required element the State must prove beyond a reasonable doubt, and the category of underlying proceeding directly determines the level of the felony the tampering constitutes. *See*, *e.g.*, *Pickett v. State*, 109 So. 3d 841, 844–45 (Fla. 3d DCA 2013). As the Appellant points out, it is fundamental error to convict a defendant of a felony that is not charged. *Jaimes v. State*, 51 So. 3d 445, 451 (Fla. 2010). "An information must allege each of the essential elements of a crime to be valid." *State v. Dye*, 346 So. 2d 538, 541 (Fla. 1977). "No essential element should be left to inference." *Id. See also Cochenet v. State*, 445 So. 2d 398, 399 (Fla. 5th DCA 1984) ("As the appellant argues in his brief, the amended information charged Cochenet entered the trailer with the intent to commit aggravated assault; it did *not* allege that the assault actually occurred. Although the fact of the assault is

clearly alleged in another count, that count cannot be used to supply an added element for count one.") (emphasis in original).

Nevertheless, the specific facts of this case demonstrate that the pre-trial colloquy constituted an effective oral amendment to the information under *Anderson v. State*, 537 So. 2d 1373 (Fla. 1989). In *Anderson*, the Florida Supreme Court held that a colloquy between the parties and the court can function as an oral amendment to a charging instrument where three conditions are met: the defendant has notice of the charge as it will actually be tried, the defendant agrees to proceed, and the defendant suffers no prejudice to his substantial rights. *Id*. at 1375-76. All three conditions are satisfied here. Before trial began, defense counsel, not the State, independently identified the reclassification issue, raised it on the record, and agreed with the State that Counts VII and VIII were properly treated as first-degree felonies. The trial court then conducted a personal colloquy with the Appellant, confirmed his understanding of the first-degree felony consequences, and the Appellant personally elected to proceed to trial on that basis. No prejudice to the Appellant's substantial rights resulted. Indeed, none could be claimed given that the reclassification issue originated with his own counsel. The conditions *Anderson* requires were therefore not merely satisfied but exceeded. Under the totality of the circumstances here— defense counsel raising the issue prior to trial, both parties agreeing, the court personally advising the Appellant, and the Appellant electing to proceed—no such prejudice appears. *See Thach v. State*, 342 So. 3d 620, 624–25 (Fla. 2022) (holding that any mid-trial amendment to an information that alters elements of a charged offense must be assessed on a case-by-case basis under the totality of the circumstances to determine whether it prejudices the substantial rights of the defendant).

Although it is a fundamental principle of due process that a defendant may not be convicted of a crime that has not been charged by the state, *Jaimes*, 51 So. 3d at 448–49, under these unique circumstances no fundamental error or denial of due process occurred. Because the information was effectively amended prior to trial, element three was part of the operative charging framework before the jury was sworn. The Appellant was personally, unambiguously, and repeatedly advised of the first-

degree felony consequences before trial began, and his own counsel shaped the Appellant's defense in accordance with the orally amended charges. The jury convicted him of tampering with a witness with all elements properly before it. Further, the jury convicted the Appellant beyond a reasonable doubt through accurate jury instructions that tracked the orally amended charging framework. Unlike *Jaimes*, where the jury returned a specific verdict convicting the defendant of an uncharged form of the offense based on elements never alleged in the charging document and never the subject of a pre-trial oral amendment, the Appellant here was not convicted of an uncharged offense. *Jaimes* is therefore inapplicable.

Lastly, the Appellant argues that the trial court compounded its error by retroactively elevating the written judgment from third-degree to first-degree felonies in response to his Rule 3.800 motion. However, the result the trial court reached was correct. In effect, the trial court was correcting a clerical error as both the trial and sentencing proceedings went forward under the Appellant's complete understanding and acknowledgment of the charges and potential sentence he could face. As established above, the defective information was effectively amended orally before trial began and with the mutual agreement of the Appellant and the State. Accordingly, the initial written judgment reflecting third-degree felonies was itself the error—inconsistent with everything the parties, the court, and the jury had established throughout the proceeding. The court merely corrected the judgment to reflect the reality of the trial and sentencing proceedings. *Palmer v. State*, 300 So. 3d 1247, 1247–48 (Fla. 5th DCA 2020) (stating that judgments must conform to jury verdicts and that trial courts retain authority to correct clerical errors at any time).

Accordingly, we affirm.

## II. Unpronounced Special Condition of Probation

In the second issue we address, the Appellant argues the trial court erred by including in the written probation order a special condition not orally pronounced at sentencing—specifically, that Appellant have no contact with the victim's family. We agree and reverse on this narrow issue.

6

## A. Pertinent Facts

After trial and following a pre-sentence investigation, a sentencing hearing was held. Following arguments from both parties, the trial court sentenced the Appellant as follows: fifteen years in the Department of Corrections on Count I (aggravated battery on a pregnant female); five years in the Department of Corrections on Count II (false imprisonment), to run consecutive to Count I; five years in the Department of Corrections on Count V (tampering with physical evidence), to run concurrent with Count I; fifteen years in the Department of Corrections on Count VIII (tampering with witness Kim Beverly), to run concurrent with Count I; and ten years of felony probation on Count VII (tampering with witness Amanda Jarrell), to run consecutive to the total prison term. The misdemeanor counts—Counts III, IV, and VI— were each resolved with credit for 245 days of time served.

At the conclusion of the sentencing hearing, the trial court orally pronounced a single no-contact special condition of probation. It stated that the Appellant was to have no contact with the victim, Stacey Mamula, in person, by third party, electronically, by email, text, social media, letter, or note. The following exchange occurred at the sentencing hearing:

> THE COURT: Ms. Mamula. No contact in person, third-party, electronically, email, text/social media, letter, note. Nothing in terms of contact with her. You're to complete a mental health evaluation, follow through with any and all recommended treatment. You're not to possess any weapons or firearms. Any other no contact provisions from -- as it relates to any other individuals related to this case? From the State?
> MR. YAZDIYA: No, Your Honor.

The court did not orally pronounce any condition restricting contact with the victim's family. The written probation order, however, included pre-formatted special condition 12, which provides that Appellant shall have no contact, direct or indirect, with the victim or the victim's family during the period of supervision. Appellant subsequently raised this discrepancy in a

7

motion to correct sentencing error filed pursuant to Rule 3.800(b)(2), Fla. R. Crim. P. The trial court denied the motion.

## B. Analysis

It is well established that the oral pronouncement of the sentence controls over the written order. *Jackson v. State*, 983 So. 2d 562, 572 (Fla. 2008) (recognizing a written order which deviates from the oral pronouncement as a "sentencing error" subject to Rule 3.800(b)); *Clark v. State*, 315 So. 3d 776, 781 (Fla. 1st DCA 2021). Where a written probation order imposes a special condition not included in the trial court's oral pronouncement at sentencing, that condition must be stricken. *Clark*, 315 So. 3d at 781. *See also* § 948.039, Fla. Stat. ("The court shall impose the special terms and conditions by oral pronouncement at sentencing and include the terms and conditions in the written sentencing order.").

Accordingly, we reverse and remand solely for the trial court to strike the words "or the victim's family" from special condition 12 of the written probation order so that the special condition conforms to the oral pronouncement of no contact with the victim.

## III. Conclusion

We affirm on all issues with the sole exception of the special condition of probation. We reverse only as to the inclusion in the written probation order of the condition of no contact with the victim's family, which was not orally pronounced at sentencing. We remand with instructions to strike that language from special condition 12 of the written probation order.

AFFIRMED, in part, REVERSED, in part, and REMANDED WITH INSTRUCTIONS.

ROBERTS and M.K. THOMAS, JJ., concur.

8

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

Jessica J. Yeary, Public Defender, and Kathryn Lane, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Kristie Regan, Assistant Attorney General, Tallahassee, for Appellee.